543 So.2d 1179 (1988)
Ex parte TRAYLOR NURSING HOME, INC.
(Re TRAYLOR NURSING HOME, INC.
v.
ALABAMA STATEWIDE HEALTH COORDINATING COUNCIL).
86-1543.
Supreme Court of Alabama.
September 30, 1988.
Rehearing Denied in Part and Granted in Part March 10, 1989.
*1180 Alvin T. Prestwood of Capouano, Wampold, Prestwood & Sansone, Montgomery for petitioner.
Don Siegelman, Atty. Gen., and Margaret Scholten Childers, Asst. Atty. Gen., for respondent.
John T. Mooresmith and J. Tim Coyle, Mobile, for amicus curiae Alabama Renal Stone Institute, Inc.
ADAMS, Justice.
Traylor Nursing Home, Inc. (hereinafter "Traylor"), sued the Alabama Statewide Health Coordinating Council for a declaratory judgment and injunctive relief, alleging that it had violated the Alabama Administrative Procedures Act. Ala.Code 1975, § 41-22-10 (1982 Repl.Vol.).[1] Traylor sought to determine whether an amendment to the State health plan constituted a "rule" within the definition set forth in Ala.Code 1975, § 41-22-3(9) (1982 Repl. Vol.). The Montgomery County Circuit Court entered judgment against Traylor, finding that the amendment to the State health plan was not a rule within the meaning of § 41-22-3(9). A post-judgment motion to alter, amend, or vacate the judgment was denied and Traylor appealed to the Court of Civil Appeals. The Court of Civil Appeals affirmed the trial court's judgment and subsequently denied Traylor's application for rehearing. 543 So.2d 1176. We granted certiorari, and we reverse.

FACTS
The Alabama Statewide Health Coordinating Council (hereinafter the "health council") and the State Health Planning and Development Agency (hereinafter the "state agency") were established as a result of a federal law, for the purpose of adopting and maintaining a State health plan (hereinafter "SHP"). See 42 U.S.C.A. § 300m-3(c)(2).
"The state health plan shall provide for the development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, at reasonable costs, for all residents of the state."
Ala.Code 1975, § 22-21-260(4).
The health council's primary responsibility is to prepare, review, and revise the SHP and also to advise the state agency "on matters relating to health planning and resource development and to perform other functions as may be delegated to it." § 22-21-260(2).
The state agency is primarily responsible for presenting "by rules and regulations the criteria and clarifying definitions for reviews covered by this article." § 22-21-264.
The Alabama Administrative Procedure Act (hereinafter the "AAPA" or the "act") was designed "to provide a minimum procedural code for the operation of all state agencies when they take action affecting the rights and duties of the public." Ala. Code 1975, § 41-22-2(a). (Emphasis added.) Furthermore, the act provides:
"Every state agency having express statutory authority to promulgate rules and regulations shall be governed by the provisions of this chapter and any additional provisions required by statute, and shall also have the authority to amend or repeal rules and regulations, and to prescribe methods and procedures required *1181 in connection therewith. Nothing in this chapter shall be construed as granting to any agency the authority to adopt or promulgate rules and regulations."
Ala.Code 1975, § 41-22-2(d). A "rule," as defined in the AAPA, is "[e]ach agency regulation, standard or statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency," including "the amendment or repeal of all existing rules." § 41-22-3(9) (emphasis supplied).
The purpose of the AAPA, at least in part, is to protect public interest and participation, as well as to increase governmental accountability by establishing specific notification procedures that must be followed in order for a state agency to implement rules and regulations that affect the public. See § 41-22-2(b). For example, § 41-22-5, requires an agency to give at least "35 days notice of its intended action" in the Alabama Administrative Monthly, and the act also requires that such notice be forwarded to the chairman of the joint committee on administrative regulation review. See § 41-22-23. In addition, all interested persons must be given an opportunity to respond to the proposal, either orally or in writing. See § 41-22-5(a)(2). Furthermore, § 41-22-6 requires that the rule be filed with the legislative reference service after it has been adopted, and § 41-22-7 requires the rule to be indexed in the "Alabama Administrative Code." By requiring state agencies to follow procedures regarding notification of their intent to adopt rules, regulations, or policies, the public has an opportunity to participate in the decision making process on issues affecting its rights.
The health council adopted an amendment to the SHP regarding authorization for a swing bed in a hospital. The amendment was then forwarded to the governor for approval, and it became effective on July 16, 1985. The amendment to the SHP being challenged in this lawsuit provides as follows:
"SWING BEDS
"Definition
"A swing bed is a licensed hospital bed that can be used for either a hospital or skilled nursing home patient. A Swing Bed Program is authorized in Alabama to include hospitals which meet the criteria as specified in 42 CFR Parts 405, 435, 440, 442, and 447 listed in the Federal Register dated July 20, 1982.
"According to the above named Federal Register and/or this SHP, a swing bed hospital must meet the following requirements:
"(1) must be located in an area other than a SMSA.
"(2) must have less than 50 licensed inpatient hospital beds as of March 1, 1985 (excludes bassinets and intensive care beds).
"(3) must have a valid provider agreement under Medicare.
"(4) must meet the discharge planning and social services standards applicable to participating skilled nursing facilities.
"(5) must not have a waiver for 24-hour nursing coverage.
"(6) must be granted a certificate of need to provide skilled nursing facility services from the State Health Planning and Development Agency.
"(7) each participating hospital is limited to 10 swing beds.
"(8) the average length of stay for swing bed patients must not exceed 30 days.
"(9) beds authorized as swing beds will remain licensed as a general hospital bed and be included in the general acute care inventory and bed needs methodology."
Pursuant to this amendment, licensed hospitals that meet the "criteria" set forth in the statute may be granted a certificate of need (hereinafter "CON") to designate certain acute care beds as "swing" beds, so that the hospital can treat skilled nursing home patients (as opposed to hospital patients) in the hospital facility. The effect of this change is to allow hospitals to use beds that would otherwise remain empty because there are not enough hospital patients to fill their beds.
Traylor operates a nursing home that is required by law to obtain a CON to render *1182 services to its patients. Section 22-21-265 provides:
"[N]o person to which this article applies shall acquire, construct or operate a new institutional health service, as defined in this article, or furnish or offer, or purport to furnish a new institutional health service, as defined in this article, or make an arrangement or commitment for financing the offering of a new institutional health service, unless such person shall first obtain from the SHPDA a certificate of need therefor."
In addition, before a CON is granted, the state agency must conclude that
"the proposed new institutional health service or facility is consistent with one or more of the appropriate state health facility and services plans effective at the time the application was received by the state agency, which shall include the latest approved revisions of the following plans:

"A. Alabama state health plan."
§ 22-21-264(1).
Traylor sued to challenge the swing bed amendment to the SHP on the ground that the health council failed to follow the procedural requirements set forth in the AAPA. Traylor claims that because the SHP is considered when the state agency grants CON's, it is important that health care providers participate in the process of adopting rules regarding the criteria for granting a CON. More specifically, Traylor claims that if a hospital is permitted to obtain a CON for a hospital swing bed based on the rule adopted by the health council, its doing so will affect Traylor's nursing home business and Traylor wants to participate in the rule-making process.
The health council admits that it did not follow the procedural requirements set forth in the AAPA; however, the health council notes that it did follow the federal procedural regulations before adopting the amendment. Pursuant to the federal regulations, the health council asserts, it gave 30 days' notice of a public hearing regarding the amendment, by publishing the information in seven metropolitan newspapers. See 42 U.S.C. § 300m-3(c)(2)(B).
There are three issues before this Court, the first two of which are questions of first impression:
1) Is the amendment to the SHP regarding swing beds a "rule" within the meaning of § 41-22-3(9), of the AAPA?
2) Is the health council an "agency" within the meaning of § 41-22-2(d), of the AAPA?
3) Did the health council "substantially comply" with the AAPA requirements?
In order to decide that the swing bed amendment is governed by the AAPA requirements, we must conclude that the swing bed amendment is a "rule" and that the agency adopting the "rule" is the type of agency that was intended to be covered by the AAPA. We answer yes to both questions; therefore, we conclude that the swing bed amendment subject to the AAPA requirements. Finally, we conclude that the swing bed amendment is invalid, because the health council failed to substantially comply with the AAPA.

I.
The first issue is whether the swing bed amendment adopted by the health council is a "rule" within the definition set forth in Ala.Code 1975, § 41-22-3(9) (1982 Repl.Vol.). The trial court held that the "swing bed" amendment was not a rule within the meaning of the AAPA, stating:
"The action of the SHCC is a regulatory activity which resembles legislation. The adoption of this amendment is applicable to a large segment of the population. It is clearly outside the scope and context of any specific controversy. A specific controversy would arise with an application to the SHPA to construct a facility or to offer health service. The adoption of the swing bed amendment is therefore not a rule under the AAPA. As noted, `the importance in having a careful and precise definition of "rule" is to distinguish the regulatory activity that resembles legislation, applicable to all persons or a relatively large segment of the population outside the context of any specific controversy, from administrative *1183 activity that has a more judicial character and which, therefore, ought to be subject to judicial review.'"
The Court of Civil Appeals affirmed the holding of the trial court. We believe that the trial court misunderstood the definition of a "rule," as provided in the AAPA.
The trial court quoted the commentary to § 41-22-3(9), which is somewhat ambiguous. Read alone, without the benefit of the express language in the statute, it is difficult to determine whether the comment states that "regulatory activity" is a rule or that "administrative action" is a rule. Nevertheless, the trial court determined that because the swing bed amendment resembled legislation, it was not a rule. We find to the contrary. A careful reading of the commentary to § 41-22-3(9), reveals that because the amendment resembles legislation it is a rule.
Professor Bonfield, an authority on state administrative law, has said that the word "rule" is intended to have a broad definition,
"including agency interpretations of statutes, rules, or other species of law or policy. In addition, the definition is not restricted to agency statements that declare principles of substantive law or policy as distinguished from procedural law or policy."
A. Bonfield, State Administrative Rule Making, § 3.3.4, at 90-91 (1986).
The health council argues that a "rule" within the meaning of the AAPA is a fixed general principle applied by an agency without regard to other facts and circumstances. Furthermore, the health council claims that the SHP is rarely used by the state agency in considering an application for a CON and even then it is merely a guideline that is considered along with other factors; therefore, the health council argues, the SHP does not conform to the AAPA's definition of a "rule."
The health council also claims that the contents of the SHP and the manner in which it is used further support the conclusion that it is not a rule subject to the AAPA requirements. The health council claims that the SHP is a statement of goals containing a description of the components of a healthful environment and the needs and resources of the state. See 42 U.S.C. § 300m-2(b)(2) and § 300m-3(c)(2)(A). The health council notes that the SHP includes extensive statistical data concerning the socioeconomic and physical characteristics of the state population and the general status of health care delivery systems in the state. Although some provisions of the SHP implement, interpret, or prescribe state policy in the sense that the state agency must consider these provisions in deciding whether to approve applications for CON's the health council claims that the majority of the SHP is a collection of background information and statistical data that do not affect the legal rights of any person or provider.
We must agree with Traylor that the swing bed amendment is a rule within the meaning of § 41-22-3(9). Although the SHP may contain information and statistical data that do not constitute rules, the SHP also prescribes, implements, and describes state policy and procedure. Furthermore, in order for certain health care providers to obtain a CON, the state agency must consider whether the rule is in compliance with the SHP. The SHP admittedly contains rules and requirements, in addition to its general statements about the health care system in this state, and we conclude that the swing bed amendment is an example of that type of rule.
A rule, as defined in the AAPA, can be a regulation, standard, or statement that prescribes policy or describes procedures or practice requirements. It appears clear to this Court that the swing bed amendment either prescribes or describes procedures or "requirements" for health care providers. First, the language on the face of the amendment states that the listed elements are "requirements" for a swing bed CON. We see no distinction between requirements for granting a CON and a rule for determining who is granted a CON. Second, the fact that the amendment uses the word "must" in almost every subsection of the amendment is inferential evidence that the act is establishing some sort of mandatory *1184 rule, standard, requirement, or the like.
Another aspect of the definition of a rule is that it must be a statement of "general applicability" rather than a determination, decision, order, statement of policy, or interpretation in a contested case.[2] See § 41-22-3(9). It is clear from reading the swing bed amendment that it is not a standard or rule for a specific contested case; rather, it is a rule of general applicability setting forth the standard by which a swing bed CON is granted.
Looking only at the face of the amendment, we can imagine no better example of a rule, regulation, or standard. Therefore, we conclude that the swing bed amendment is a "rule" within the meaning of § 41-22-3(9), of the AAPA.

II.
Having concluded that the swing bed amendment is a rule within the meaning of the AAPA, we now reach the second question: Is the health council an "agency" within the meaning of the AAPA?
The AAPA states that the act applies only to those agencies with express statutory authority to promulgate rules and regulations. Ala.Code 1975, § 41-22-2(d) and § 41-22-5(c). The functions of the health council are set forth in Ala.Code 1975, § 22-4-8, and they include:
"(a) The statewide health coordinating council shall advise and serve as consultants to the state board of health regarding policies and regulations necessary for carrying out this article.
"(b) In addition, the council shall perform the following functions:
"(1) Review annually and coordinate the health systems plans of each of the health systems agencies;
"(2) Prepare, review and revise as necessary, with the assistance of the state health planning and development agency, and approve or disapprove, the state health plan, which shall be made up of the health systems plans modified to achieve their coordination and compliance with statewide health planning criteria and standards;
"(3) Review the state medical facilities plan, pursuant to Title XVI of the Public Health Service Act, prepared by the state health planning and development agency, and approve the plan as consistent with the state health plan and advise and consult with the state agency in carrying out the plan; provided, that until such time as Title XVI of the Public Health Service Act is implemented, the statewide health coordinating council shall advise and consult with the state agency in the preparation, review and administration of the state medical facilities plan pursuant to Title VI of the Public Health Service Act;
"(4) Conduct public hearings on the state health plan and the state medical facilities plan;
"(5) Review annually the budget of each health systems agency;
"(6) Review applications for planning grants for health systems agencies and health service development;
"(7) Review annually and approve or disapprove any state plan and any revision of a state plan or application for funding under the health Planning and Resource Development Act, the Community Mental Health Centers Act or the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970;
"(8) Serve as the advisory council to the designated planning agency for the administration of section 1122 of the Social Security Act;
"(9) Serve as advisory council to the state agency for the certificate of need program;

*1185 "(10) Appoint and create such committees as it may deem necessary to administer its functions; provided, that not less than 50 percent of the members of each committee shall be consumers;
"(11) Advise the state agency of the state generally on the performance of its functions; and
"(12) Perform such other functions that may be necessary from time to time to carry out the administration of its duties."
The agency with the express statutory authority to promulgate rules is the state agency, which "shall prescribe by rules and regulations the criteria and clarifying definitions for reviews covered by this article [referring to the `Control and Development of Certain Health Care Facilities']." Ala. Code 1975, § 22-21-264.
There is no dispute that the health council is a state agency organized pursuant to Ala.Code 1975, § 22-4-7; however, the parties do disagree about whether the health council is the type of state agency covered by the AAPA. The health council claims that the statutes regarding the health council, see §§ 22-4-7, 22-4-8, and 22-21-260(2) and (4), do not confer any rule-making authority on the health council; rather, it says, the health council serves an advisory function. The health council asserts that even though it is responsible for preparing and revising the SHP and reviewing the plan every three years according to federal law, see 42 U.S.C. § 300m-3(c)(2)(A), the health council is not authorized to legally adopt an SHP or any amendments thereto. In fact, the health council argues, the Governor has final approval of any recommended amendments to the SHP. Because the Governor can approve or disapprove its suggestions, the health council argues that it can not be said that it is the rule-making body; therefore, it says, the AAPA should not apply to it.
Furthermore, the health council argues, following the requirements of the AAPA would potentially conflict with and/or defeat implementation of the federal law because § 41-22-22 to -24, Ala.Code (1975), permit the legislature to suspend and/or disapprove new agency rules. Because the existence of the SHP is required by federal rules and the AAPA could prevent the SHP from being adopted, there is a potential conflict that could cause Alabama to lose federal funding.
Traylor responds to the states contention with two arguments. First, it quotes Am. Jur.2d:
"Rules and regulations of administrative agencies are of different classes. Otherwise stated, administrative agencies have various kinds of rulemaking powers and, for one purpose or another, these may be viewed under different aspects, such as the source of the authority to make the rules, the purpose of the rules, the process involved in making the rules, the extent of discretion involved, and the legal effect given the rules. Classifications based on one or another of these aspects are not necessarily exclusive of other classifications.
"It has been said that there are three types of rulemaking powers: (1) rulemaking by reason of particular delegation of authority; (2) rulemaking by the construction and interpretation of a statute being administered; (3) determination under a delegated power whether a statute shall go into effect.
"While most rules or regulations are made under an express or implied general power to interpret or to prescribe rules, some statutes make provisions for certain matters specifically or in effect `under regulations to be prescribed.'"
1 Am.Jur.2d Administrative Law § 94 (1962).
Second, Traylor argues that even if this Court assumes, for the sake of argument, that the health council does not have express statutory authority to promulgate rules, the health council should nevertheless be subject to the AAPA requirements because it has taken on the duty of promulgating rules. In other words, it says, if this Court permitted the health council to avoid the AAPA regulations by adopting rules and regulations that should have been adopted by the state agency, then the *1186 Court runs the risk of allowing the health council to promulgate rules and regulations without the benefit of the state procedural requirements. We agree with Traylor's argument.
On the face of § 22-4-8, it appears that the basic purpose of the health council was to serve in an advisory capacity to the state agency; however, the language of the statute does not expressly prohibit the health council from promulgating rules and regulations. Furthermore, although the AAPA states that it applies only to those agencies with "express statutory authority" to promulgate rules and regulations, the AAPA also states that it "is intended to provide a minimum procedural code for the operation of all state agencies when they take action affecting the rights and duties of the public." § 41-22-2(a). (Emphasis added.) Additionally, § 41-22-25 states that the AAPA should be construed broadly to effectuate the purpose of the act, which is to increase public interest and participation, as well as to increase governmental accountability.
We believe that the legislature intended to pass a law to protect the public and that it did not intend to allow the health council or the state agency to circumvent the regulations through a technicality. If either the health council or the state agency could pass the same proposal, then the health council has rule-making authority, at least by implication.
In addition, the fact that the Governor or the state agency has final approval of the amendment is irrelevant, given the purpose of the AAPA. The AAPA provides a mechanism for both business people and the general public to participate in the development and adoption of rules, regulations, standards, or procedures that affect the public or a specific industry. If the state health care agencies in this state can circumvent the procedural requirements by dividing their powers, then the public lacks the protection the legislature intended it to have.
Finally, if the health council only recommended passage of this proposal to the state agency and the Governor, and they, in turn, adopted the rule, then the state agency and/or the Governor would be the agency responsible for complying with the AAPA. If, on the other hand, for all intents and purposes, the health council adopted the rule and the Governor merely approved it, then the AAPA should have been followed by the health council. In either case, because this is a rule affecting the public's rights, we conclude that there should have been compliance with the AAPA.
Looking at the amendment broadly, with the intent of effectuating the purpose of the AAPA, we conclude that the health council is an agency within the meaning of § 41-22-3(9); therefore, it was required to follow the requirements set forth in the AAPA.

III.
The final issue that we must address is whether the swing bed amendment is valid in spite of the fact that it is a rule that should have been adopted pursuant to the AAPA, because the health council "substantially complied" with the AAPA procedures. Traylor is not claiming that it did not have notice that the health council was considering the swing bed amendment; rather, Traylor asserts that the health council blatantly disregarded Alabama law regarding the procedure for adopting the amendment. The health council responds by stating that it followed the federal requirements, which, although admittedly different, it says, were better than the state rules; therefore, the health council asserts, there was no need to abide by the state procedure. Furthermore, the health council argues, § 41-22-10 states that the rule should not be declared void unless the agency has failed to substantially comply with the AAPA requirements. Because the health council followed the federal rules, it asserts that it substantially complied with the state rules.
Traylor argues that the health council does not have the option of choosing which rules it will apply, because the health council is obligated to abide by the state rules regardless of its compliance with the federal *1187 rules. See § 41-22-25. In addition, Traylor notes that these federal procedural requirements were recently repealed, and Traylor argues that this repeal further illustrates the need for required compliance with the state procedures. The health council argues that the fact that these federal requirements were recently repealed is irrelevant to the disposition of this case, because, it says, the federal requirements were effective at the time the challenged amendment in this case was made.[3]
We agree with Traylor. Assuming that the health council followed the federal requirements, the fact that it did so would not be an excuse for its admitted failure to abide by the state requirements. The health council does not have the option of choosing the rules applicable to it. Furthermore, we conclude that there was not even substantial compliance with the state rules. The AAPA requires publication of the proposal in the "Alabama Administrative Monthly" and submission to the legislative reference service. The purpose of these publication requirements is to provide one consolidated record of the rules and regulations regarding health care services that affect the public and the health care providers. With the exception of publishing notification of a public hearing in seven metropolitan newspapers, the health council failed to publish the proposal or the adopted amendment as required by the AAPA. In addition, it gave only 30 days' notice of the public hearing (which is the notice required under the federal rule), rather than 35 days' notice of the hearing as required by the AAPA.
For the foregoing reasons, we conclude that the health council failed to substantially comply with the AAPA.
Two additional questions have not been disposed of in this appeal. The health council challenged Traylor's standing to bring a declaratory judgment action against it. In addition, the health council claimed that Traylor had not been denied due process because it had had the opportunity to participate in the amendment process; therefore, the health council argues, Traylor suffered no damage and is not entitled to relief.
Both the trial court and the Court of Civil Appeals concluded that it did not have to adjudicate the standing and due process issues because of its conclusion that the swing bed amendment was not a "rule" within the meaning of § 41-22-3(9). Because we conclude that the swing bed amendment is a rule and reverse the judgment of the Court of Civil Appeals, the standing and due process issues must be addressed. We remand to the Court of Civil Appeals, with instructions to remand to the trial court, for a determination of these factual questions.
For the foregoing reasons, the judgment of the Court of Civil Appeals is due to be, and it hereby is, reversed, and the case is remanded with instructions.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MADDOX, HOUSTON, and STEAGALL, JJ., concur.
BEATTY, J., concurs in the result.
TORBERT, C.J., and SHORES, J., dissent.

ON APPLICATION FOR REHEARING
ADAMS, Justice.
We have granted the health council's application for rehearing only to determine whether our decision in the instant case should operate prospectively or retroactively. The determination of retroactive or prospective application of our decision is a matter of judicial discretion, which must be exercised on a case by case basis. State v. Morrison Cafeterias Consol., Inc., 487 So.2d 898 (Ala.1985), citing Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and City of Birmingham v. Brasher, 359 So.2d 1153 (Ala.1978).
*1188 In accordance with the spirit of fairness of Traylor's acquiescence in a prospective application of our decision, and to avoid the threat of costly litigation noted by the health council, we hold that our decision shall be given prospective application only to the SHP and its amendments, except for the CON's involving the "swing bed" amendment, to which our decision shall be given retroactive application.
APPLICATION FOR REHEARING GRANTED IN PART AND DENIED IN PART; OPINION EXTENDED.
MADDOX, JONES, HOUSTON and STEAGALL, JJ., concur.
SHORES, J., dissents.
HORNSBY C.J., not sitting.
NOTES
[1] Ala.Code 1975, § 41-22-10 (1982 Repl.Vol.), provides as follows:

"The validity or applicability of a rule may be determined in an action for a declaratory judgment or its enforcement stayed by injunctive relief in the circuit court of Montgomery county, unless otherwise specifically provided by statute, if the court finds that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. In passing on such rules the court shall declare the rule invalid only if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with rulemaking procedures provided for in this chapter."
[2] § 41-22-3(3) defines "contested case" as follows:

"Contested Case. A proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing; provided, however, that the term shall not include intra-agency personnel actions."
[3] Traylor acknowledges the fact that the federal requirements were effective at the time the swing bed amendment was adopted, but Traylor notes that without the federal regulations there is no one to supervise the state agencies that promulgate rules and regulations that affect the public.