[1] Gwendolyn H. Williams no longer serves as the commissioner of Alabama Medicaid Agency. See Rule 43(b), Ala.R.App.P., which automatically substitutes a public officer's successor as a party.
Hartford Healthcare, Inc. ("Hartford"), was the operator of a nursing home in Geneva that furnished services to patients eligible for Medicaid benefits. On July 1, 1996, Hartford sold the nursing home to Advocat, Inc., d/b/a Diversicare Management Services ("Diversicare"). Because Hartford would no longer be providing long-term nursing home care after the sale of the nursing home, it was required to file a final cost report with the Alabama Medicaid Agency ("Medicaid") pursuant to Rule 560-X-22-.15(4) of the Alabama Administrative Code. After conducting an audit of Hartford's final cost report, Medicaid determined that it had overpaid Hartford $25,354.74, and it sought repayment from Hartford in that amount.
In a letter written on February 7, 1997, Hartford formally disagreed with the findings of Medicaid's audit. Hartford asserted that Medicaid had failed to include a direct-patient-care-cost incentive allowance of $4.60 per patient per day in its audit calculations. Hartford claimed that the total amount of direct-patient-care-cost incentives owed to it was $95,930.04. Hartford also asserted that the amount of provider-specific taxes it had paid to Medicaid for the period from July 1, 1995, to June 30, 1996, was $71,910.00, rather than the $69,744.00 determined by Medicaid. Hartford contended that this amounted to an overcharge of provider-specific taxes by Medicaid in the amount of $2,166.00. Hartford claimed that because of these two errors Medicaid's audit should be corrected to reflect that Medicaid actually owed Hartford $72,741.30.[2]
Hartford subsequently requested an informal conference with Medicaid to discuss the disputed portions of the audit, and a conference was held on February 19, 1997. Following the conference, Jesse Loving, the director of Medicaid's provider-audit division, wrote a letter to Hartford in which he agreed with Hartford's position concerning the discrepancy in provider-specific taxes, and stated that $2,166.00, the amount in dispute, should be added to Hartford's allowable property cost. However, Loving also stated in the letter that Medicaid disagreed with Hartford's claim that it was entitled to the direct-patient-care-cost incentive allowance of $4.60 per patient per day.
At Hartford's request, an administrative hearing was held on June 30, 1997. Before the hearing officer, Medicaid and Hartford presented arguments regarding whether Hartford was entitled to the direct-patient-care-cost incentives. The parties' dispute on this issue focused on the *Page 18 
proper interpretation of Rule 560-X-22-.15(3), which provides as follows:
 "(3) Upon voluntary or involuntary complete withdrawal of a facility participating in the Medicaid program, the provider will be subject to a retroactive adjustment based upon the difference between the amount of reimbursement paid by Medicaid and the actual allowable costs incurred by the former provider during the following periods: . . . ."
Hartford argued that it was not subject to the retroactive adjustment provision of Rule 560-X-22-.15(3), because, it said, it was a "provider" and not a "facility" as defined in the rules promulgated under the Alabama State Medicaid Plan. The term "facility" is defined under the rules as "any structure licensed by the State of Alabama for the purpose of providing long-term care to the aged, ill, or disabled." Rule 560-X-22-.03(10). The rules defined "provider" as "a person, organization, or facility who or which furnishes services to patients eligible for Medicaid benefits." Rule 560-X-22-.03(25). Hartford also contended that Medicaid had not followed the practice of applying Rule 560-X-22-.15(3) to providers in the past. Hartford argued that Medicaid had reversed its former position on this issue without notice, and had thus violated the Alabama Administrative Procedure Act ("AAPA") (§ 41-22-1 et seq., Ala. Code 1975).
Medicaid argued that the retroactive adjustment set forth in Rule 560-X-22-.15(3) applied to Hartford because the terms "facility" and "provider" are interchangeable in the nursing home industry. Medicaid contended that this was particularly true with respect to the implementation of the Alabama State Medicaid plan in the nursing home industry. Medicaid admitted to changing its prior interpretation of the rule in question, reversing its former practice of allowing terminating providers to be paid incentives. Medicaid contended that its former interpretation of the rule had been in error. Medicaid claimed that when it discovered the error in January 1996, it ceased its practice of paying incentives to terminating providers. Medicaid argued it was not required to give notice of its change in the interpretation of the rule, because the rule was not being amended. Following the hearing, the hearing officer recommended that Medicaid should not credit Hartford with the direct-patient-care-cost incentive allowance in Hartford's final cost report, and that Diversicare, Hartford's successor, should be liable for the $25,354.74 that Medicaid had overpaid Hartford for the 1995-96 reporting period. On September 2, 1997, Gwendolyn Williams, the commissioner of Medicaid, entered an order adopting the hearing officer's recommendations.
Hartford petitioned for review in the Circuit Court of Montgomery County. On May 13, 1998, the trial court entered a judgment affirming Medicaid's decision. In that judgment the trial court found that Hartford was subject to a retroactive adjustment pursuant to Rule 560-X-22-.3 based on the difference between the amount Medicaid had paid to Hartford during the 1995-96 reporting period, and Hartford's actual allowable costs as reflected in its final cost report. In its judgment the trial court held that Medicaid's interpretation of this rule was reasonable and in compliance with federal guidelines. The trial court further held that, although Medicaid had departed from its prior interpretation of the rule, this change in interpretation was prompted by compelling reasons and was therefore permissible. In support of this proposition, the trial court cited MobileCounty Gas District v. Mobile Gas Service Corp., 227 So.2d 565
(Ala. 1969).
On appeal Hartford argues that the trial court erred in determining that it was subject to the retroactive-adjustment provision of Rule 560-X-22-.15(3).
An overview of the framework of Medicaid's cost reimbursement is necessary to gain an understanding of how this dispute arose. Chapter 560-X-22 of the Alabama Administrative Code outlines the *Page 19 
procedures and policies for Medicaid's cost-reimbursement system. Ala. Admin. Code Rule 560-X-22-.01. Medicaid reimburses nursing homes based upon a per diem rate that is determined by cost data submitted in the nursing homes' cost reports. Ala. Admin. Code Rule 560-X-22-.05.
Medicaid's cost-reimbursement system implements an advance-payment plan. In order to allow nursing homes adequate time to prepare and submit a cost report and to provide Medicaid with sufficient time to compute current rates for the nursing homes, Medicaid pays each nursing home an interim per diem rate for the period from July 1 through December 31 of each year. Rule560-X-22-.05(1). Thereafter, Medicaid pays an adjusted per diem rate to each nursing home for the portion of the fiscal year remaining after the new rate for the nursing home is established. Rule 560-X-22-.05(1).
The allowable costs for nursing homes are organized into one of the following cost categories: (1) operating costs; (2) direct patient-care costs; (3) indirect patient-care costs; and (4) property costs. Rule 560-X-22-.06(2). Direct patient-care costs include "[t]he provider's actual allowable reported cost per patient per day plus 10% . . . ." Rule 560-X-22-.06(2)(b). The additional figure in the amount of 10 % of direct patient-care costs is referred to as an "incentive."
Medicaid paid Hartford direct patient-care costs, including the incentive, on a projected basis from July 1995 through July 1996, pursuant to Rule 560-X-22-.05.[3] When Hartford sold its nursing home to Diversicare on July 1, 1996, terminating its participation in the Medicaid program, it filed a final cost report with Medicaid pursuant to Rule 560-X-22-.15(4). Following its audit of Hartford's final cost report, Medicaid determined that it had overpaid Hartford in the amount of $25,354.74, because Hartford had not spent the entire amount of the advance payments made by Medicaid to Hartford for the 1995-96 reporting year.
Hartford points out that in the past Medicaid has not followed the practice of applying Rule 560-X-22-.15(3) to terminating providers. Hartford contends that, because when Medicaid reversed its position on the application of the rule it did so without notice, it violated the AAPA (§ 41-22-1 et seq.).
Medicaid concedes that it reversed its position in applying Rule 560-X-22-.15(3) to providers. During the administrative hearing, Jesse Loving testified that from the time of the inception of Medicaid's current cost-reimbursement system in September 1991, until January 1996, Medicaid had paid the 10% incentive fees to all terminating providers. Loving explained that in January 1996 Medicaid reversed its position regarding the payment of incentives to terminating providers, because the agency determined that it had been interpreting and applying Rule 560-X-22-.15(3) incorrectly. Loving testified that Medicaid construed the Boren Amendment (42 U.S.C. § 1396a(a)(13)(A)), and Rule 560-X-22-.22 to prohibit the payment of direct-patient-care-cost incentives to terminating providers because the incentives are not actual incurred costs. The Boren Amendment provides that a state Medicaid plan should pay nursing homes expenses that are
 "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated *Page 20 
facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations and quality and safety standards."
42 U.S.C. § 1396a(a)(13)(A) (emphasis added). Rule 560-X-22-.22 states:
 "It is the intent of the program that providers will be reimbursed the reasonable costs which must be incurred in providing quality patient care."
(Emphasis in the original.)
Hartford claims that Medicaid's reversal of its former position on the application of Rule 560-X-22-.15(3) to terminating providers constitutes an amendment of the rule, within the context of § 41-22-3(9), Ala. Code, which requires compliance with the notice and comment provisions of the AAPA. It is undisputed that Medicaid failed to comply with these provisions.
The AAPA was designed to provide minimal due-process procedural requirements for all state administrative agencies when those agencies are taking actions that affect the rights and duties of the public. § 41-22-2(a); See also, Krupp Oil Co. v.Yeargan, 665 So.2d 920, 925 (Ala. 1995); Benton v. Alabama Bd. ofMedical Examiners, 467 So.2d 234, 236 (Ala. 1985); and Wood v.State Personnel Bd., 705 So.2d 413, 416 (Ala.Civ.App. 1997).
The AAPA requires that, before it adopts, amends, or repeals any rule, an administrative agency must publish notice of its intended action, at least 35-days in advance, in the Alabama Administrative Monthly and give all interested persons an opportunity to respond to the proposal, either orally or in writing. § 41-22-5(a). The AAPA also requires an agency to give notice of its intended action to the chairman of the Joint Committee on Administrative Regulation Review. § 41-22-23. The AAPA confers authority to the Joint Committee on Administrative Regulation Review to study all proposed rules, to hold public hearings thereon, and to approve, disapprove, or propose an amendment to any proposed rule. § 41-22-23. The notice and comment requirements outlined in § 41-22-5(a) and the legislative-oversight provisions set forth in § 41-22-23 are applicable to proposed administrative "rules."
The dispositive issue presented in this case is whether Medicaid's reinterpretation of Rule 560-X-22-.15(3) constitutes an amendment of that rule sufficient to fall within the § 41-22-3(9) definition of a "rule," requiring notice and comment. Section41-22-3(9) defines "rule" as follows:
 "(9) Rule. Each agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency. . . . The term includes the amendment or repeal of all existing rules. . . ."
(emphasis added).
The term "rule" is intended to have a broad definition in regard to the procedural requirements of the AAPA. Ex parteTraylor Nursing Home, Inc., 543 So.2d 1179, 1183 (Ala. 1988) (opinion by Adams, J., joined by Maddox, Houston, and Steagall, JJ.), citing A. Bonfield, State Administrative Rule Making, § 3.3.4. at 90-91 (1986).
It is undisputed that Medicaid has not consistently applied the retroactive-adjustment provision of Rule 560-X-22-.15(3) toall terminating providers; therefore, Medicaid's revised interpretation of the rule meets the requirement of general applicability set forth in § 41-22-3(9). Further, we find it clear that Medicaid's amended interpretation of Rule 560-X-22-.15(3) meets the statutory requirement of prescribing law or policy with regard to the state Medicaid cost-reimbursement system. § 41-22-3(9). A review of the evidence leads us to conclude that Medicaid's revised interpretation of Rule 560-X-22-.15(3) meets the necessary requirements set forth in the statutory definition of the term "rule." § 41-22-3(9). *Page 21 
Our Supreme Court has concluded that certain generally applied administrative-agency actions that prescribed law or policy, but fell short of formal rule publication, were nevertheless deemed to be "rules" for purposes of § 41-22-3(9), requiring notice and comment. See, e.g., Brunson Construction andEnvironmental Services, Inc. v. City of Prichard, 664 So.2d 885
(Ala. 1995) (a method utilized by the Alabama Department of Environmental Management for calculating permissible volume for landfills was considered a rule pursuant to § 41-22-3(9), despite the fact that the method was unwritten, informal, and subjective); and Ex parte Traylor Nursing Home, Inc., supra (a plurality of our Supreme Court determined that an amendment to the State Health Plan allowing hospitals to use up to 10 "swing beds," licensed hospital beds that can be used for either hospital patients or skilled-nursing-home patients, was an administrative rule as contemplated by § 41-22-3(9), requiring notice and comment).
This court has held that minor changes to rules or proposed rules, made before adoption, did not require notice and comment if the changes did not alter the substance of the concept in the original rule. See Alabama Renal Stone Institute, Inc. v. AlabamaStatewide Health Coordinating Council, 628 So.2d 821 (Ala. 1993). Medicaid does not argue that its amended interpretation is a minor or insignificant change. Medicaid concedes that its revised interpretation of Rule 560-X-22-.15(3) is a complete reversal of its initial position on the interpretation of the rule. It is clear that the facts of the present case do not fall within the exception set forth in Alabama Renal Stone Institute.
The Commentary to § 41-22-3(9) states that in determining what agency actions are subject to administrative rulemaking procedures it is important to
 "distinguish the regulatory activity that resembles legislation, applicable to all persons or a relatively large segment of the population outside the context of any specific controversy, from administrative activity that has a more judicial character and which, therefore, ought to be subject to judicial review."
Further, in Wood v. State Personnel Board, supra, this court has recognized that "`[t]he agency carries the burden of justifying its avoidance of [rulemaking] notice and comment procedures by showing the effect of the rule is within the personnel or management classes and is solely internal, with no effect on the public.'" J. O'Reilly, Administrative Rulemaking § 3.06 at 47-48 (1983).
Our Supreme Court has concluded that administrative action that "resembles legislation" is a "rule" for the purposes of the procedural requirements of the AAPA. Ex parte Traylor NursingHome, Inc., 543 So.2d 1179, 1183 (Ala. 1988). The record reflects that after Hartford had requested an administrative hearing, Medicaid sought to formally amend Rule 560-X-22-.15(3) by changing the word "facility" in that regulation to "provider."Alabama Administrative Monthly, March 31, 1997, at 153. On April 9, 1997, the Joint Committee on Administrative Regulation Review disapproved Medicaid's proposed amendment to Rule 560-X-22-.15(3).Alabama Administrative Monthly, May 30, 1997, at 210. The fact that Medicaid sought to accomplish by reinterpretation of Rule 560-X-22-.15(3) what it failed to achieve by formal amendment to the rule serves as further evidence that Medicaid's "reinterpretation" of Rule 560-X-22-.15(3) resembled legislation and therefore was a "rule" within the definition of § 41-22-3(9).
Section 41-22-5(a) requires publication of a rule in the Alabama Administrative Monthly and submission to the Legislative Reference Service. One important purpose of the publication requirements of § 41-22-5(a) is to provide one complete record of the rules and regulations pertaining to Medicaid's reimbursement system. Justice Adams, in Ex parte Traylor *Page 22 Nursing Home, explained the intent of the notice requirements of the AAPA:
 "The purpose of the AAPA, at least in part, is to protect public interest and participation, as well as to increase government accountability by establishing specific notification procedures that must be followed in order for a state agency to implement rules and regulations that affect the public."
543 So.2d at 1181.
We recognize the expertise of administrative agencies in their specialized areas, and we are aware of the general principle that reviewing courts should accord deference to the decisions of administrative agencies, because of this expertise. However, the discretion bestowed upon administrative agencies is not unbridled. When an administrative agency substantially changes its interpretation of its regulation and the new interpretation "substantially affects the legal rights of, or procedures available to, the public or any segment thereof," the administrative agency is bound to comply with formal AAPA rulemaking procedures. See § 41-22-3(9)(c). Although this may, in some instances, restrict the discretion of the administrative agencies, the burden imposed on agencies by this restriction is outweighed by the necessity for fairness to the regulated parties and the general public that is provided by the notice and comment rulemaking procedures of the AAPA.
To condone Medicaid's reversal of its former interpretation of Rule 560-X-22-.15(3) would render the AAPA formal rulemaking procedures basically superfluous by permitting administrative agencies to alter their regulations at will through the guise of "correcting a mistake." Therefore, Medicaid may not apply Rule 560-X-22-.15(3) to Hartford or to other terminating providers until it has promulgated a regulation providing for such application under the formal rulemaking requirements under the AAPA. See §§ 41-22-4; 41-22-5; 41-22-6; and 41-22-23.
Hartford also argues that the amount of provider-specific taxes that it had paid to Medicaid for the period July 1, 1995, to June 30, 1996, was $71,910.00 rather than $69,744.00, as determined by Medicaid, amounting to a difference of $2,166.00. Hartford contends that it should be credited with this amount in its final cost report. The record does not reflect that this issue was raised at the administrative hearing or before the trial court. It is a well-established principle that this court is precluded from reviewing issues that were not raised and ruled upon in the trial-court proceeding. Norman v. Bozeman,605 So.2d 1210 (Ala. 1992). Therefore, we will not address this issue.
Because Medicaid failed to comply with the procedural requirements set forth in § 41-22-5(a), we reverse the judgment of the trial court and remand this matter for the entry of an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Robertson, P.J., and Yates, Monroe, and Crawley, JJ., concur.
[2] This amount was derived from the total amount of direct- patient-care-cost incentive allowances Medicaid denied Hartford (i.e., $95,930.04) plus the amount of provider-specific taxes Medicaid allegedly failed to consider in its audit (i.e., $2,166.00) minus the amount Medicaid claims Hartford owes it (i.e., $25,354.74).
[3] Rule 560-X-22-.05 requires Medicaid to pay an interim per diem rate to each provider from July 1 through December 31 of each year. The evidence indicates that Medicaid paid Hartford the interim rate, including the incentive, for the entire fiscal year from July 1, 1995, through June 30, 1996. There is no explanation in the record for the apparent inconsistency between the 6-month period July 1 through December 31, during which Rule 560-X-22-.05
required Medicaid to pay interim per diem rates, and the 12-month period July 1995 through June 1996, during which Medicaid actually paid an interim rate to Hartford.