PER CURIAM.
In March 2011, HealthSouth of Alabama, L.L.C. (“HealthSouth”), petitioned the Statewide Health Coordinating Council (“the Council”) for an adjustment to the State Health Plan. The Council is a State agency that prepares, reviews, revises, and approves the State Health Plan. § 22-4-8(b)(2), Ala.Code 1975; see Ex parte Traylor Nursing Home, Inc., 543 So.2d 1179, 1184-86 (Ala.1988) (stating that the Council is an agency). The State Health Plan is a comprehensive plan that “providefs] for the development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, at reasonable costs, for all residents of the *308 state.” § 22-21-260(13), Ala.Code 1975. The State Health Plan is a part of the Alabama Administrative Code, see Rule 410-2-1 et seq., Ala. Admin. Code (State Health Planning and Development Agency); all the administrative rules discussed in this opinion are contained in the State Health Plan.
HealthSouth sought the adjustment to the State Health Plan to indicate the need for 17 inpatient-rehabilitation beds in Shelby County. At the time, there were no inpatient-rehabilitation beds in Shelby County. HealthSouth sought the adjustment as a necessary step in its plan to later obtain certification to build an inpatient-rehabilitation facility in Shelby County. The proposed adjustment was opposed by Columbiana Health and Rehabilitation, LLC, a nursing-and-rehabilitation entity; 25 other nursing-and-rehabilitation entities; and the Healthcare Authority of Cull-man County d/b/a Cullman Regional Medical Center (collectively “the nursing homes”).[1]
Following a public hearing, the Council approved the proposed adjustment to the State Health Plan, and Governor Robert Bentley approved the adjustment on September 15, 2011. On October 15, 2011, the nursing homes sued, in the Montgomery Circuit Court, the Council; the State Health Planning and Development Agency (“SHPDA”); Alva Lambert, the director of SHPDA; Mary Holcomb, the chair of the Council; and Governor Bentley. The nursing homes alleged that the adjustment had been improperly adopted, and they sought declaratory and injunctive relief or, alternatively, a writ of mandamus or cer-tiorari. HealthSouth intervened as a defendant. Following a trial, the circuit court entered a judgment in favor of the defendants, and the nursing homes appealed to this court.
On appeal, the nursing homes first argue that the Council erred in adopting the adjustment because, they say, the adjustment is actually an improperly adopted “rule” under the Aabama Administrative Procedure Act, § 41-22-1 et seq., Ala. Code 1975 (“the AAPA”). It is undisputed that the Council did not adopt the adjustment pursuant to the rulemaking procedures of the AAPA. Thus, if the adjustment is in substance actually a rule under the AAPA, the Council erred by adopting it without following the rulemaking procedures of the AAPA. See § 41-22-5, Aa. Code 1975 (discussing the rulemaking procedures of the AAPA); § 41-22-20(k)(l), Ala.Code 1975 (stating that an agency action made in violation of a statutory provision is subject to reversal upon judicial review).
*309 In pertinent part, the AAPA defines a “rule” as “[e]ach agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy.” § 41-22-3(9), Ala.Code 1975. The “amendment” of a rule is also considered a rule under the AAPA. Id. Similarly, the State Health Plan states that an “amendment” to a rule in that plan is subject to the AAPA’s rulemaking procedures. Rule 410-2-5-.04(2)(c), Ala. Admin. Code (SHPDA). The nursing homes argue that the adjustment is a rule because, they say, it amended Rule 410-2-4-.08(3), Ala. Admin. Code (SHPDA) (“the inpatient-rehabilitation rule”), which concerns the need methodology for inpatient-rehabilitation beds. That rule establishes a “region” as the planning area regarding inpatient-rehabilitation beds, stating that there is a need for 12 inpatient-rehabilitation beds per 100,000 people for each region. Under the inpatient-rehabilitation rule, there are seven regions, and each region consists of several counties. Shelby County, the subject of the adjustment in this case, is located in Region III. The nursing homes argue that the adjustment, which indicated the need for 17 inpatient-rehabilitation beds in Shelby County, amended the inpatient-rehabilitation rule by changing the planning area from the region — Region III — to the county — Shelby County.
The Council adopted the adjustment pursuant to Rule 410-2-5-.04(2)(a), Ala. Admin. Code (SHPDA) (“the adjustment rule”). In pertinent part, the adjustment rule defines an “adjustment” to the State Health Plan as follows:
“(a) Plan Adjustment — In addition to such other criteria that may be set out in the [State Health Plan], a requested modification or exception, to the [State Health Plan], of limited duration, to permit additional facilities, beds, services, or equipment to address circumstances and meet the identified needs of a specific county, or part thereof, or another specific planning region that is less than statewide and identified in the State Health Plan.”
The nursing homes interpret the adjustment rule as prohibiting a county-based adjustment regarding inpatient-rehabilitation services; the nursing homes emphasize that the inpatient-rehabilitation rule establishes a “region ” as the planning area for such services. The nursing homes argue that the Council’s county-based adjustment in fact impermissibly changed the planning area from the region to the county. We disagree. “‘[Language used in an administrative regulation should be given its natural, plain, ordinary, and commonly understood meaning, just as language in a statute.’” Ex parte Wilbanks Health Care Servs., Inc., 986 So.2d 422, 427 (Ala.2007) (quoting Alabama Medicaid Agency v. Beverly Enters., 521 So.2d 1329, 1332 (Ala.Civ.App.1987)). The adjustment rule expressly provides that the Council may make adjustments to the State Health Plan to meet the identified needs of a “specific county.” The rule does not state that services planned by region are subject to adjustments only on a regional basis. The adjustment in this case does not amend the inpatient-rehabilitation rule; the region remains the planning area, subject to adjustments made under the adjustment rule.
This court addressed a similar situation in Health Care Authority of Athens v. Statewide Health Coordinating Council, 988 So.2d 574 (Ala.Civ.App.2008) (plurality opinion). Athens involved a challenge to an adjustment to the State Health Plan indicating the need for 60 acute-care hospital beds in the City of Madison. The State Health Plan provided for the planning of acute-care hospital services on a county *310 wide basis. The opponents of the adjustment in Athens argued that adjustments concerning acute-care beds must be made on a county-wide basis, i. e., that such adjustments could not be made regarding only a city. Thus, like the situation in this case, Athens concerned the issue whether an adjustment may be made to an area smaller than the planning area designated by the State Health Plan.
In Athens, this court noted that the adjustment rule specifically allows for an adjustment to meet the needs of “a specific county, or part thereof.” 988 So.2d at 580-81. Thus, the court concluded that the Council may adopt an adjustment concerning a city even when the planning area for a particular type of service is the county. Similarly, in this case, the Council may adopt an adjustment concerning the county — an area specifically mentioned in the adjustment rule — although the planning area for inpatient-rehabilitation services is the region.
Moreover, ‘“the interpretation of an agency regulation by the promulgating agency carries “ ‘controlling weight unless it is plainly erroneous or inconsistent with the regulation.’ ” ’ ” Fraternal Order of Police, Lodge No. 64 v. Personnel Bd. of Jefferson Cnty., 103 So.3d 17, 25 (Ala.2012) (quoting Brunson Constr. & Envtl. Servs., Inc. v. City of Prichard, 664 So.2d 885, 890 (Ala.1995), quoting in turn other cases); see also Sylacauga Health Care Ctr., Inc. v. Alabama State Health Planning Agency, 662 So.2d 265, 268 (Ala.Civ.App.1994) (stating that “an agency’s interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation”). The nursing homes argue that the Council did not actually interpret the adjustment rule, and thus, they argue, there is no interpretation that is due deference. The nursing homes argue that the Council’s “interpretation” of the adjustment rule is simply an after-the-fact litigation position. We disagree. Whether the Council may make a county-wide adjustment despite a region-based planning methodology was an issue debated before the Council at the hearing in this case. It is evident that the Council interpreted the adjustment rule to allow for an adjustment concerning an area smaller than the region. The Council’s interpretation is consistent with the plain language of the adjustment rule and is due deference.
The nursing homes also argue that the adjustment in this case is a rule because, they say, the Council changed its interpretation of Rule 410-2^4-.08(4)(a), Ala. Admin. Code (SHPDA) (“the 75% occupancy rule”). The 75% occupancy rule provides that “[r]egional occupancy for the most recent reporting year should be at least 75% before the [Council] gives consideration to any requests for plan adjustments for additional [inpatient-rehabilitation] bed capacity.” In this case, the regional occupancy for inpatient-rehabilitation beds was below the 75% standard. In adopting the adjustment, the Council evidently interpreted the 75% occupancy rule as creating a nonmandatory guideline. See, e.g., Lambert v. Austin Indus., Inc., 544 F.3d 1192, 1196-97 (11th Cir. 2008) (interpreting the word “should” to be permissive and not mandatory). The nursing homes do not argue that this interpretation is incorrect; rather; they argue that the Council, before adopting this adjustment, had historically interpreted the 75% occupancy rule as mandatory. Relying on Hartford Healthcare, Inc. v. Williams, 751 So.2d 16 (Ala.Civ.App.1999), the nursing homes argue that the Council’s alleged change in interpretation of the 75% occupancy rule constituted an improper adoption of a rule. Hartford provides that “[wjhen an administrative agen *311 cy substantially changes its interpretation of its regulation and the new interpretation ‘substantially affects the legal rights of, or procedures available to, the public or any segment thereof,’ the administrative agency is bound to comply with formal AAPA rulemaking procedures.” 751 So.2d at 22 (quoting § 41-22-3(9)(c)).
The record on appeal does not indicate that the Council had previously interpreted the 75% occupancy rule as mandatory but changed its interpretation in this case to treat the rule as permissive. In support of their argument, the nursing homes cite the language of the adjustment itself. The adjustment, which is found in Rule 410-2-4-.08(5) (SHPDA), provides: “Notwithstanding anything to the contrary, recognizing the need for an inpatient rehabilitation hospital in Shelby County, the [Council], through the adjustment process in September of 2011, adjusted the planning policy to recognize the need for 17 additional rehabilitation beds to be located in Shelby County.” (Emphasis added.) The nursing homes seem to argue that the Council admitted that it changed its interpretation of the 75% occupancy rule by stating that it “adjusted the planning policy.” However, we view this phrase as simply a general description that there was an adjustment made under the adjustment rule. We do not view it as an “admission” that the Council had previously viewed the 75% occupancy standard as mandatory.
Insofar as the nursing homes argue that the Council changed its interpretation of the adjustment rule to permit a county-based adjustment regarding inpatient-rehabilitation services, thereby requiring it to comply with rulemaking procedures, as held in Hartford, that argument is unpersuasive. The inpatient-rehabilitation rule, which recognizes a region as the planning area for inpatient-rehabilitation services, was adopted in 1998. Subsequently, before making the adjustment in this case, it appears that the Council made three adjustments to the State Health Plan concerning inpatient-rehabilitation services. The Council made such adjustments on a regional basis in 2003 and 2009. Regarding the third case, the parties dispute whether the Council, in 2005, made an adjustment to a particular region or to Houston County. On its face, that adjustment concerns Houston County, but the proceedings in that case indicate that the Council actually approved an adjustment regarding the region, not the county. Regardless, the nursing homes have not established that the Council had interpreted the adjustment rule to allow for only region-based adjustments in inpatient-rehabilitation cases but changed the interpretation in this case. Again, Athens is instructive. In Athens, the opponents of the adjustment argued that the Council had changed its interpretation by adopting the adjustment on a city-wide basis rather than on a county-wide basis. The plurality opinion rejected that argument, noting that “[t]he record does not indicate that the Council has ever interpreted the State Health Plan to allow for only an acute-care-bed-need adjustment on a county-wide basis.” 988 So.2d at 581. Similarly, in this case, there is no indication that the Council had previously interpreted the adjustment rule to bar inpatient-rehabilitation-services adjustments on a county-wide basis. Thus, the record does not indicate that the Council has changed its interpretation.
The nursing homes also argue that the Council acted arbitrarily and capriciously by adopting the adjustment. Under the AAPA, the Council’s decision is subject to reversal if it is arbitrary or capricious, among other criteria. § 41-22- *312 20(k)(7), Ala.Code 1975. In arguing that the Council acted arbitrarily and capriciously, the nursing homes cite certain comments made by four members of the Council at the hearing on whether to adopt the proposed adjustment. Of the four members, one member seemed to doubt the Council’s authority to make the adjustment on a county-wide basis; one member opined that the Council did not have such authority; one member seemed to suggest that the adjustment would be proper and beneficial while also acknowledging the regional planning methodology; and one member cryptically stated that the Council should be “consistent” and opined, without explanation, that the Council had recently acted in contravention to the State Health Plan. The nursing homes argue that those comments indicate that the Council knowingly violated the State Health Plan by adopting the adjustment and, therefore, acted arbitrarily and capriciously. We disagree. We have established that the adjustment rule found in the State Health Plan allowed for the adjustment in this case. Thus, we fail to see the relevance of the comments of the Council members debating the authority to make the adjustment. Further, we note that the Council voted 11-7 to adopt the adjustment. There is no indication that the comments of a minority of the Council at the hearing somehow represent the opinions of the majority. Thus, the nursing homes’ argument that the Council knowingly violated the State Health Plan is based on a unsupported factual allegation.
The nursing homes also argue that the Council acted beyond its statutory authority in adopting the adjustment. The text of the adjustment indicates that the Council, “recognizing the need for an inpatient rehabilitation hospital in Shelby County,” made the adjustment “to recognize the need for 17 additional rehabilitation beds to be located in Shelby County.” The nursing homes argue that the Council does not have that authority to recognize the need for a rehabilitation hospital in Shelby County. The nursing homes contend that only SHPDA has the authority to make such a determination. However, § 22-4-8(b)(2) provides that the Council is to “[pjrepare, review, and revise as necessary” the State Health Plan. (Emphasis added.) Of course, before the Council made the adjustment, the State Health Plan addressed the need for inpatient-rehabilitation services in Alabama. By making the adjustment, the Council, pursuant to its statutory authority, simply revised the State Health Plan to reflect the need for inpatient-rehabilitation services in Shelby County. The Council did not exceed its statutory authority in making the adjustment.
Finally, the nursing homes ask this court to overrule Montgomery Rehabilitation Hospital, Inc. v. State Health Planning Agency, 610 So.2d 403 (Ala.Civ.App.1992) “to the extent necessary in this case.” In Montgomery Rehabilitation, the Council revised the State Health Plan to indicate the need for 26 rehabilitation beds in the Dothan area. The Council maintained that the revision was an adjustment to the State Health Plan, but opposing parties argued that the revision was a rule under the AAPA. This court concluded that the revision was not a rule on two grounds: (1) the revision was not “generally applicable” because it was “limited in geographic scope [to the Dothan area] and [was] not applicable to all potential and existing rehabilitation service providers statewide” and (2) the revision “was contemplated in the language of the 1988-1992 [State Health Plan] as it was originally adopted.” 610 So.2d at 407.
The nursing homes ask this court to overrule Montgomery Rehabilitation, if *313 necessary, insofar as it expressed a geographic-scope standard in its analysis, ie., the first ground upon which the decision was based. However, the nursing homes further argue that the geographic-scope standard is dicta that, regardless, was modified by this court’s decision in Hartford, supra. Assuming, without deciding, that the geographic-scope standard in Montgomery Rehabilitation is dicta that was modified in Hartford, we see no reason to consider overruling Montgomery Rehabilitation. As indicated above, the Council’s adjustment is due to be upheld on the basis of the plain language of the adjustment rule, the deference due the Council’s interpretation of that rule, Hartford, and Athens. We note that the circuit court cited Montgomery Rehabilitation in upholding the adjustment. However, the circuit court also relied on the plain language of the rehabilitation rule, the deference due the Council’s interpretation of that rule, and this court’s decision in Athens. Insofar as the circuit court relied on the alleged dicta in Montgomery Rehabilitation, the circuit court’s judgment upholding the adjustment is due to be affirmed on other grounds.
We affirm the circuit court’s judgment upholding the Council’s adjustment.
AFFIRMED.
PITTMAN, BRYAN, and MOORE, JJ„ concur.
THOMPSON, P.J., concurs in the result, without writing.
THOMAS, J., dissents, with writing.

. The other nursing-and-rehabilitation entities are Shelby Ridge Acquisition Corporation d/b/a Shelby Ridge Nursing Home; GGNSC Bessemer, LLC, d/b/a Golden Living Meado-wood; GGNSC Birmingham, LLC, d/b/a Golden Living Riverchase; GGNSC Huey-town, LLC, d/b/a Golden Living Hueytown; Civic Center Health and Rehabilitation, LLC; South Health and Rehabilitation, LLC; Oak Knoll Health and Rehabilitation, LLC; North-way Health and Rehabilitation, LLC; South Haven Health and Rehabilitation, LLC; Cor-dova Health and Rehabilitation, LLC; Legacy Health and Rehabilitation of Pleasant Grove, LLC; Talladega Healthcare Center, Inc; American Health Corporation d/b/a Terrance Oaks Care and Rehabilitation Center; American Health Corporation d/b/a Oak Trace Care and Rehabilitation Center; Prime Health Enterprises, LLC, d/b/a Goodwater Healthcare Center, LLC; Preferred Health Holding II d/b/a Ridgewood Healthcare Center; USA Healthcare d/b/a Cullman, LLC; USA Healthcare d/b/a LTC, LLC; USA Healthcare d/b/a Woodland Village, L.L.C.; Haleyville Health Care Center, LLC; Hatley Health Care, Inc.; Ball Health Care Services d/b/a Cherry Hill; Ball Health Care Services d/b/a Eastview Healthcare; Ball Health Care Services d/b/a Arlington Rehabilitation & Healthcare Center; and GGNSC Trussville, LLC, d/b/a Golden Living Trussville.