This case is an appeal by the University of Alabama Hospitals consolidated with an *Page 722 
appeal by Springhill Hospitals, Inc., of a decision of the Circuit Court of Montgomery County construing the certificate of need provisions of Alabama's health planning statute, §§22-21-260 through -277, Code 1975 (Repl.Vol. 1984), so as to determine if either could obtain an exemption from the certificate of need requirements pursuant to recent federal legislation and corresponding provisions of the Code of Federal Regulations.
The State Health Planning Development Agency (SHPDA) (the agency which prescribes the criteria for review of certificates of need and monitors the comprehensive Alabama State Health Plan) received a request from Springhill Hospitals, Inc. (Springhill), for acquisition of a lithotripter for research purposes only. At about the same time, the University of Alabama Hospital (UAB) sent a letter to SHPDA, giving notice of its intent to acquire a lasertripter, also for research purposes. Both requests were filed pursuant to a recent statute (42 U.S.C. § 300m-6(h) of the National Health Planning and Development Act — which we note has, since this appeal was perfected, been repealed) and the federal regulation promulgated thereunder (42 C.F.R. § 123.404(d)), both of which permit the several states to exempt from their certificate of need program acquisitions of major medical equipment used solely for research. Both requests were placed on the agenda of the Certificate of Need Review Board (CONRB). CONRB heard and granted an exemption to Springhill for 365 days from the date of its acquisition of a research lithotripter. Alabama Renal Stone Institute, Inc. (ARSI), filed a petition for a declaratory ruling that the research exemption contained in the federal regulation, supra, is inconsistent with Alabama's certificate of need (CON) statute, § 22-21-260, et seq., Code 1975, and that the federal regulation has no effect in Alabama. CONRB declined to hear ARSI's petitions, but later did hear and deny ARSI's petition on the merits and tabled its petition for adoption of a rule.
Following the denial of its petition for declaratory ruling, ARSI appealed to the circuit court. Since the legal questions and issues were identical in both appeals to the circuit court, the cases were consolidated.
The circuit court held that SHPDA acted outside its scope of authority by granting an exemption to Springhill and by not requiring UAB to obtain a certificate of need. From those rulings, Springhill and UAB filed this appeal.
The principal issues presented for our review are whether the provisions of 42 C.F.R. § 123.404(d), as published in the Federal Register, Vol. 50, No. 9, January 14, 1985, are inconsistent with § 22-21-265(a), Code, and whether Rule410-1-1-.03 of SHPDA, if valid, could effectively adopt the provisions of 42 C.F.R. § 123.404(d), supra. Simply stated: Did SHPDA have statutory authority to promulgate rules and regulations relating to review criteria and review procedures for CON applications so as to grant exemptions for medical equipment to be used solely for research purposes?
The progenitor of our present state statute, Act No. 1197,Acts of Alabama 1975, contained the following preamble:
 "A bill to regulate and promote the public health and to bring the laws of Alabama into conformity with PL 93-641, the 'National Health Planning and Resources Development Act of 1974' (42 U.S.C. § 300-k, et. seq.). . . ."
The language of this present certificate of need statute, §22-21-265(a), Code, is as follows:
 "(a) On or after July 30, 1979, no person to which this article applies shall acquire, construct or operate a new institutional health service, as defined in this article, or furnish or offer, or purport to furnish a new institutional health service, as defined in this article, or make an arrangement or commitment for financing the offering of a new institutional health service, unless such person shall first obtain from the SHPDA a certificate of need therefor."
The policy behind requiring such certificate is found in § 22-21-261 and is
 "to assure that only those health care services and facilities found to be in the *Page 723 
public interest shall be offered or developed in the state. It is the purpose of the legislature in enacting this article to prevent the construction of unnecessary and inappropriate health care facilities through a system of mandatory reviews of new institutional health services. . . ."
Section 22-21-274 provides:
 "Said review criteria and review procedures shall be consistent with the provisions of this article and with appropriate federal regulations."
It seems clear that the state statute was sufficient to allow SHPDA latitude to adopt procedures to conform to changing federal regulations and public laws so as to accomplish the overall purposes of the health care services and facilities program. This is supported by SHPDA's Rule 410-1-1-.03 (adopted effective March 21, 1985), which reads as follows:
 "The legislature of the State of Alabama has enacted § 22-21-260, et seq., Code of Alabama, 1975, as amended, to meet the requirements of the National Health Planning and Resources Development Act of 1974 (Public Law 93-641), as amended by the Health Planning and Resources Development Amendments of 1979 (Public Law 96-79) and with federal regulations thereunder and to insure that health services and facilities are made available to all citizens of the State of Alabama in an orderly and economical manner. Appropriate federal statutes and regulations are adopted herein by reference as legal authority for these rules and regulations. Where there is inconsistency between Alabama statute and federal regulations, Alabama statute controls; and where the Alabama statute is silent, federal regulations control."
In February of 1985, certain federal regulations had become effective which granted to individual states the discretion to exempt certain acquisitions of medical equipment to be used solely for research from their CON programs. The regulation applicable here adopts language of Public Law 96-538, § 307, which exempted from a state's certificate of need requirements the acquisition of major medical equipment to be used solely for research. This regulation is found in 42 C.F.R. § 123.404(d) and reads in pertinent part as follows:
 "(d)(1) Research Activities. The State certificate of need program need not apply to the acquisition by a health care facility of major medical equipment to be used solely for research . . . if the acquisition, offering, or obligation does not — (i) affect the charges of the facility for the provision of medical or other patient care services other than the services which are included in the research; (ii) substantially change the bed capacity of the facility; or (iii) substantially change the medical or other patient care services of the facility which were offered before the acquisition, offering, or obligation.
 "(2)(i) Before a health care facility acquires major medical equipment to be used solely for research, . . . the health care facility shall notify in writing the State Agency of the State in which the facility is located of the facility's intent and the use to be made of the medical equipment, institutional health service, or capital expenditure.
 "(ii) Paragraph (d)(1) of this section does not apply with respect to the acquisition of major medical equipment, the offering of institutional health services, or the obligation of a capital expenditure if — (A) the notice required by paragraph (d)(2)(i) of this section is not filed with the State Agency, or (B) the State Agency finds, within 60 days after the date it receives a notice in accordance with paragraph (d)(2)(i) of this section that the acquisition, offering, or obligation will have the effect or make a change described in paragraph (d)(1)(i), (ii), or (iii) of this section.
 "(3) If major medical equipment is acquired, an institutional health service is offered, or a capital expenditure is obligated and a certificate of need is not required for the acquisition, offering, or obligation as provided in paragraph (d)(1) of this section, the equipment, the service, or equipment or facilities acquired through the obligation of the capital expenditure, may not be used in such a manner as to have the effect or to make *Page 724 
a change described in paragraph (d)(1)(i), (ii), or (iii) of this section unless the State Agency issues a certificate of need approving such use.
 "(4) For purposes of this paragraph, the term 'solely for research' includes patient care provided on an occasional and irregular basis and not as part of a research program."
ARSI argues that § 22-21-265(a), requiring in all circumstances the issuance of a CON, is specific, all inclusive, and does not permit SHPDA any discretion to create exemptions from the CON process. It argues that the actions of the agency were improper because the agency rule adopting by reference the federal regulation in question is invalid. We disagree.
Appellants Springhill and UAB contend that statutory authority for SHPDA's incorporation by reference of the federal regulations is found in the Alabama Administrative Procedure Act at § 41-22-9, which reads in pertinent part:
 "An agency may adopt by reference in its rules and without publishing the adopted matter in full, all or any part of a code, standard or regulation which has been adopted by any other agency of this state or any agency of the United States. . . ."
We agree that there was such authority existing with SHPDA. By contrast we cannot agree with the trial judge's conclusion that SHPDA lacked authority to grant the research exemption under the federal regulations because none of the Alabama statutes expressly gave SHPDA this exemption authority. We are satisfied that there was no inconsistency between any provision of the state statute and the research exemption provided by the Health Programs Extension Act of 1980 and 42 C.F.R. § 123.404(d). In fact, as argued by UAB in brief, as well as in oral argument, we find that the Alabama Code provisions, § 22-21-260 et seq., are silent as to research acquisitions and that it was not the legislature's intent to regulate research acquisitions through the CON program mandated in § 22-21-261. Thus, as state statutes are silent, the federal legislation, as provided in 42 C.F.R. § 123.404 concerning research, was able to fill the gap through its ratification by SHPDA. We find that at the time SHPDA acted in this case, there were no Alabama statutory mandates governing research and therefore the federal regulations were applicable. Therefore, SHPDA had the authority under the federal scheme to grant an exemption to Springhill, as well as to allow UAB to obtain a lasertripter without first requiring a CON review.
While we are constrained by case law from considering matters raised on appeal which were not presented to the trial court, we believe it appropriate to note repeal (by passage of Public Law 99-660, § 701) of the federal rules and regulations providing authority for 42 C.F.R. § 123.401, et seq., including § 123.404(d). This came to us in the form of a motion to dismiss this appeal which we denied in order that we could address the issues previously raised. The effective date of repeal of the federal authority providing for the above discussed exemption from our CON program for major medical equipment to be used solely for research was January 1, 1987, which was, of course, during the pendency of this appeal.
This leads us to consideration of the final, yet perhaps most salient, question presented by this appeal. Does the Alabama statute standing alone require a certificate of need for equipment acquired solely for research? We hold that it does not.
The purpose of the statute is clearly expressed as it speaks of the acquisition of "new institutional health service" to "prevent the construction of unnecessary and inappropriate health care facilities" as being the paramount area in which state control is required. It makes no mention of research. Yet it speaks approvingly of the fruits of research when it says "to insure that health services and facilities are made available to all citizens of the State of Alabama in an orderly and economical manner." *Page 725 
If we cannot ignore the restrictions imposed by the well-defined purpose of our statute, then we should not ignore an area which is not controlled by it — research. To extend (by an overbroad interpretation of this statute) state controls into the research area of medical and clinical activity would severely inhibit the development of new and advanced medical services, thereby deferring the time when new machines are clinically proved to the degree of being available for institutional health care for the public. Couple this with the economy factor which experience indicates research and development programs usually produce as an ultimate benefit to medical care recipients, and the case is even stronger in favor of our narrow construction of the statute being most in the public interest.
Our last compelling reason to narrowly construe the statute is based on impingement of personal and contract rights of those who would be engaged in research programs. Health planning laws do restrict property rights. This point was addressed by our Supreme Court where, in its decision upholding this same certificate of need law, it said "restriction of entry into a field of economic endeavor is a severe infringement on individual contract and property rights."Mount Royal Towers, Inc. v. Alabama Board of Health,388 So.2d 1209, 1215 (Ala. 1980). Nor can we neglect the argument here that this statute is in derogation of common law and should be strictly construed.
We simply do not read our certificate of need law as controlling acquisition of major medical equipment which will be used solely for research.
Springhill raises the additional issue that ARSI did not have standing to bring this appeal. However, at the time intervenor status was granted pursuant to § 41-22-14, Code 1975, there was no objection. Nor was any objection raised at trial. It appears that this issue has been raised for the first time on appeal. Rule 4, Alabama Rules of Appellate Procedure, prevents us from judicially determining issues that have been raised for the first time on appeal. Boyd v. Sellers, 431 So.2d 1294, 1295
(Ala.Civ.App. 1983).
The judgment of the trial court is reversed and rendered.
REVERSED AND RENDERED.
BRADLEY, P.J., and HOLMES, J., concur.