855 So.2d 1085 (2001)
PRIME LITHOTRIPTER OPERATIONS, INC., and Prime Medical Services, Inc.
v.
LITHOMEDTECH OF ALABAMA, LLC.
State Health Planning and Development Agency
v.
LithoMedTech of Alabama, LLC.
Prime Lithotripter Operations, Inc., and Prime Medical Services, Inc.
v.
UroVenture, LLC, et al.
2991270, 2991302 and 2000192.
Court of Civil Appeals of Alabama.
December 28, 2001.
Rehearing Applications Denied May 24, 2002.
*1086 John T. Mooresmith, John C. Morrow, Cary Tynes Wahlheim, and Jennifer L. Griffin of Burr & Forman, L.L.P., Birmingham, for Prime Lithotripter Operations, *1087 Inc., and Prime Medical Services, Inc.
Mark D. Wilkerson and Keith S. Miller of Brantley, Wilkerson & Bryan, P.C., Montgomery, for State Health Planning and Development Agency.
Thomas T. Gallion III, Constance C. Walker, and Jamie A. Johnston of Haskell, Slaughter, Young & Gallion, L.L.C., Montgomery, for LithoMedTech of Alabama, L.L.C.
Lenora Pate and E. Barry Johnson of Sirote & Permutt, P.C., Birmingham, for UroVenture, LLC, DCH Health Care Authority d/b/a DCH Regional Medical Center, The Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital, Quorum Health Group of Gadsen, Inc., d/b/a Gadsen Medical Center, and Baptist Health d/b/a Baptist Medical Center South.
Gregg Brantley Everett, Montgomery, for amicus curiae The Alabama Hospital Association.
PER CURIAM.[1]
These three appeals involve mobile lithotripsy services in the State of Alabama. The procedural history of the three appeals differs. Lithotripsy is a noninvasive surgical procedure that disintegrates kidney stones. However, the ultimate issue is whether vendors of mobile lithotripsy equipment are required to seek certificate-of-need review.
The procedural history of cases no. 2991270 and no. 2991302, is as follows: Prime Lithotripter Operations, Inc., d/b/a Tennessee Valley Lithotripsy and Alabama Lithotripsy Services, and its parent corporation, Prime Medical Services, Inc. (hereinafter collectively referred to as "Prime Medical"), and the State Health Planning and Development Agency ("SHPDA") appeal from the trial court's judgment holding that LithoMedTech of Alabama, LLC, as a vendor, was not required to obtain a certificate of need (hereinafter "CON") in order to lease mobile lithotripsy equipment to rural hospitals in Alabama.
On March 2, 1998, LithoMedTech filed applications seeking five separate CONs for mobile lithotripter units. Each application contained a proposal to provide mobile lithotripsy equipment on a rotating basis to various hospitals within a designated area.[2] Prime Medical timely intervened in each of LithoMedTech's applications and requested a contested-case status pursuant to Ala. Admin. Code § 410-1-7-.15 and 410-1-9-.03, a portion of SHPDA's rules governing the CON program, and § 41-22-14, Ala.Code 1975. Prime Medical contended that the needs of Alabama residents were being adequately served through the rotating mobile lithotripsy services it was providing.[3]
*1088 In addition to providing lithotripsy services through two approved fixed-based sites in Mobile and Birmingham, Prime Medical currently provides mobile lithotripsy equipment and services on a scheduled rotational basis at qualified sites in Muscle Shoals, Anniston, Huntsville, Gadsden, Tuscaloosa, and Montgomery.[4]
SHPDA's executive director granted the requested contested-case status and, pursuant to CON Rule 410-1-8-.02, directed that a public hearing be held before an administrative law judge ("ALJ") appointed by the Governor of the State of Alabama. An ALJ was appointed and was charged with the responsibility of conducting the proceedings in accordance with § 41-22-1 et seq., the Alabama Administrative Procedure Act ("AAPA"). The function of the ALJ was to conduct proceedings and to submit recommended findings of facts and conclusions of law to the certificate of need review board ("CONRB") regarding the approval or denial of the applications in accordance with § 41-22-15.
On May 19, 1998, LithoMedTech wrote SHPDA's executive director, asserting that its proposal (which had been presented in its March 2, 1998 applications for five separate CONs) was not subject to CON review at all. LithoMedTech stated in its letter that it sought "clarification" as to whether it was required to secure CONs to provide the equipment. The executive director replied by correspondence that it would be "inappropriate" to respond until the ALJ had completed her review or had returned the projects to the agency. LithoMedTech subsequently moved for declaratory relief with the ALJ, before the contested-case hearing began, but after the deadline had expired for filing prehearing motions. In its motion, LithoMedTech sought a ruling that its applications were not subject to CON review. The ALJ denied the requested declaratory relief, in part because LithoMedTech's motion was untimely; the motion was also denied because the ALJ reasoned that LithoMedTech should have sought a letter of "nonreviewability" from SHPDA's executive director before filing any of its CON applications. See CON Rule 410-1-7-.02, which allows, for informational purposes only, a determination as to current reviewability of an anticipated project.
By agreement of the parties, and to promote judicial economy, one combined case hearing was held over a period of three days to hear evidence on all five CON applications. Each application was considered separately. On July 27, 1998, one week after the contested-case hearing was concluded, but before the ALJ issued any decisions, LithoMedTech filed a declaratory-ruling request with the CONRB, pursuant to CON Rule 410-1-9-.01, and § 41-22-11, seeking a determination that its applications were exempt from CON review based on § 22-21-263(a)(4). Section 22-21-263(a)(4) exempts certain rural hospitals from CON review. The CONRB denied LithoMedTech's ruling request without addressing the merits of the request, reasoning that LithoMedTech had raised this issue in the contested-case hearing before the ALJ, and was, therefore, required to exhaust its remedies before seeking a declaratory ruling pursuant to CON Rule 410-1-9-.01. LithoMedTech did not appeal from this ruling, although judicial review of the CONRB's ruling on a *1089 declaratory-ruling request is provided for in § 41-22-11(b).
More than a year after the contestedcase hearing was concluded, the ALJ issued "Recommended Findings of Fact and Conclusions of Law," affirming the denial of LithoMedTech's motion for a declaratory ruling and recommending that CONRB approve the five applications. On September 27, 1999, CONRB rejected the recommendations and the conclusions of the ALJ and denied LithoMedTech's applications.
On September 29, 1999, LithoMedTech filed a request for a fair hearing pursuant to § 22-21-275(14). A fair-hearing review was conducted on December 17, 1999. On January 21, 2000, the fair-hearing officer ("FHO") entered an order affirming the CONRB's decisions on the merits, denying LithoMedTech's applications for the CONs and concluding that the CONRB's decisions were "made in compliance with all applicable, legal, and procedural requirements," and were not arbitrary and capricious. The FHO's decision constitutes the final, appealable, decision of SHPDA. See § 22-21-275(14).
On February 22, 2000, LithoMedTech appealed the FHO's decisions to the Circuit Court of Montgomery County, requesting that the decisions be set aside pursuant to § 41-22-20. On August 10, 2000, the trial court entered a final judgment vacating the FHO's decisions, holding that SHPDA did not have subjectmatter jurisdiction over the matter because the statute does not require mobile medical equipment vendors, and in particular mobile lithotripsy equipment vendors, to obtain a CON, and holding that SHPDA lacked jurisdiction over the matter because the applications for CONs which LithoMedTech filed "did not trigger the required criteria or monetary thresholds set forth in SHPDA's rules."
On August 24 and September 1, 2000, respectively, Prime Medical and SHPDA separately appealed from the trial court's final judgment. On September 14, 2000, the trial court consolidated those appeals ex mero motu. On September 28, 2000, the trial court granted Prime Medical's motion for a stay of its judgment pending the resolution of the appeal. LithoMedTech unsuccessfully moved the court to vacate its order staying its final judgment.
The procedural history of case no. 2000192, is as follows: Prime Medical[5] appeals from a judgment granting UroVenture, LLC, declaratory and injunctive relief. The trial court's judgment declared that UroVenture was not required to obtain a CON in order to lease mobile lithotripsy equipment to qualified hospital sites and enjoined SHPDA from requiring CON review of UroVenture's proposal to lease the equipment.
UroVenture was formed by Lithotripsy Providers of Alabama, LLC, which owns 50.1% of UroVenture, and Urology Services, LLC, which owns 49.9% of UroVenture. Lithotripsy Providers is owned by DCH Health Care Authority d/b/a DCH Regional Medical Center; the Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital; QHG of Gadsden, Inc. d/b/a Gadsden Regional Medical Center; and Baptist Health, d/b/a Baptist Medical Center South (hereinafter referred to as the "four hospitals"). Urology Services is owned by physicians, most of whom serve on the staffs of the four hospitals.
*1090 UroVenture developed a proposal to acquire two mobile lithotripsy machines and then lease them to the four hospitals for use on a rotating basis. The four hospitals currently have lease agreements with Prime Medical. On June 13, 2000, pursuant to CON Rule 410-1-7.02, Uroventure submitted a nonreviewability determination request to SHPDA, seeking a determination by SHPDA's executive director of whether the proposal was subject to CON review. CON Rule 410-1-7.02 provides that any person may request "for informational purposes only a determination as to the current reviewability [under CON law] of an anticipated project." SHPDA, through its executive director, determined that the proposal was subject to CON review, citing CON Rule 410-1-4-.01(1)(e) as authority for its position. CON Rule 410-1-4-.01(1)(e) provides that CON review is required with the "acquisition, by any person, of major medical equipment that will be owned by or located in a health care facility, or which will be used to provide health services to persons admitted to a health care facility...."
UroVenture and the four hospitals then sued SHPDA and its executive director in his official capacity, seeking declaratory and injunctive relief pursuant to § 41-22-10, Ala.Code 1975, and Rules 57 and 65, Ala. R. Civ. P. In the complaint, UroVenture sought a declaration that it was not required to seek CON review under § 22-21-260, et seq., Ala.Code 1975, absent implication of the criteria set forth in § 22-21-263; it also sought a declaration that CON Rule 410-1-4-.01(1)(d) and (e) cannot be interpreted to require UroVenture to obtain CON review of its proposal. In addition, UroVenture sought to enjoin SHPDA and its executive director from enforcing any CON rule which is inconsistent with or beyond the scope of § 22-21-260 et seq.
On September 5, 2000, Prime Medical moved to intervene pursuant to Rule 24, Ala. R. Civ. P. The trial court granted Prime Medical's motion to intervene on September 11, 2000. On September 6, 2000, SHPDA and its executive director filed an answer, asserting that the complaint was due to be dismissed because of the failure to join the Alabama Statewide Health Coordinating Council ("SHCC") pursuant to § 41-22-10.
The trial court held a hearing on September 11, 2000, on UroVenture's request for injunctive relief. At the hearing, UroVenture presented the testimony of Dr. Terry Stallings, a urologist and investor in UroVenture, who testified about the deficiencies in the quality of the services Prime Medical was providing to the four hospitals under their current lease agreements. In addition, Dr. Stallings discussed how UroVenture's proposal was designed to remedy those deficiencies. Jody Pigg, chief financial officer and senior vice-president of Baptist Health and manager of UroVenture, also testified that he had determined that the proposal would generate a cost savings to Baptist Health of approximately $150,000 to $250,000 per year.
At the hearing, the trial court denied the pending motions to dismiss for nonjoinder of SHCC. The trial court consolidated UroVenture's motion for a preliminary injunction with the hearing on the merits, and continued the evidentiary hearing until October 5, 2000. At the October 5, 2000 hearing, Prime Medical presented one witness, Dr. Joseph Jenkins, a urologist and vice-chairman of the board of Prime Medical Services, Inc. Dr. Jenkins disputed much of the testimony presented by UroVenture on the issue of quality of services provided by Prime Medical.
Additionally, Prime Medical introduced into evidence the public-hearing transcript from the January 19, 2000, meeting of *1091 CONRB, at which it had amended CON Rule 410-1-4-.01(1) to "clarif[y] the existing practice of the agency to require vendors of [mobile] medical equipment who seek to provide new health services in conjunction with a health care facility to get a CON."
On October 31, 2000, the trial court entered a final judgment in favor of UroVenture. Prime Medical appealed from the judgment and moved to stay the trial court's judgment pending the resolution of the appeal. On UroVenture's motion, the trial court, on January 25, 2001, initially ordered Prime Medical to file a supersedeas bond, but shortly thereafter, on January 31, 2001, it vacated that order. The trial court granted Prime Medical's motion to stay. UroVenture filed several postjudgment motions, which the trial court denied.
When it was unable to obtain relief from the stay or the order vacating the bond requirement through postjudgment motions, UroVenture filed two separate notices of appeal; one from the trial court's judgment staying the judgment (hereinafter referred to as the "stay appeal") and the other from the trial court's order vacating the bond requirement (hereinafter referred to as the "bond appeal"). In its bond appeal, UroVenture sought alternative mandamus relief. This court dismissed both the stay appeal and the bond appeal because each had been taken from a nonfinal judgment. Further, this court denied the writ of mandamus, without an opinion.
The trial court's October 31, 2000, final judgment provided in pertinent part:
"(1) Vendors are not required to seek CON review under Section 21-22-260 et seq., absent implication of the criteria set forth in Section 21-22-263, [Ala.Code 1975].
"(2) Neither CON Rule 410-1-4-.01(1)(d) or (e), SHP Rule § 410-2-3.07(b)(5), § 22-21-260 et seq., [Ala. Code 1975,] including specifically § 22-21-263 or the SHP [State Health Plan] in general require UroVenture, or the Hospitals, to seek and obtain a new or additional CON under Section 22-21-260 et seq. [Ala.Code 1975], before implementing UroVenture's proposal to purchase and lease to hospitals major medical equipment, e.g., mobile lithotripters, which involve a capital expenditure in an amount less than the statutory threshold established in § 22-21-263 and which do not involve any other new institutional service as set forth in § 22-21-263(a)(1) (4), Ala.Code 1975."
The judgment enjoined SHPDA from enforcing any SHPDA or CON law or regulation that would require CON review of UroVenture's proposal.
We must first address the issue whether SHCC was a necessary party in the appeal involving UroVenture (No. 2000192). Prime Medical initially argues that the trial court erred in failing to dismiss UroVenture's complaint for failing to join SHCC as an indispensable party pursuant to § 41-22-10. Section 41-22-10, part of the AAPA, provides that "[t]he validity or applicability of a rule may be determined in an action for a declaratory judgment or its enforcement stayed by injunctive relief...." The statute mandates, however, that the agency promulgating such a rule shall be made a party to the action. Id. SHCC is an agent of the State of Alabama, separate and apart from SHPDA. Ex parte Traylor Nursing Home, Inc., 543 So.2d 1179 (Ala.1988). However, the rule in question, CON Rule 410-1-4-.01(1)(e) was not promulgated by SHCC. According to the transcript of the public hearing contained in the record, that rule was promulgated by SHPDA. SHCC is comprised of members appointed by the Governor. *1092 § 22-4-7. Its purpose is to advise SHPDA on matters relating to health planning and resource development. § 22-4-8. SHCC also reviews and revises the State Health Plan ("SHP") according to federal law. 42 U.S.C. § 300m-3(c)(2)(A); Ex parte Traylor Nursing Home, Inc., supra. Certain portions of the SHP and subsequent amendments thereto have been construed as rules as the term "rule" is defined within the AAPA. Ex parte Traylor Nursing Home, Inc., 543 So.2d at 1182-83. In Traylor, the plaintiff challenged the validity of an amendment to the SHP in an action filed pursuant to § 41-22-10. In that action, SHCC was the proper agency to be made a party because it was the agency that had drafted and recommended the challenged amendment to the SHP. SHPDA was not made a party to that action, presumably because it had not promulgated that challenged rule. Traylor.
Prime Medical argued that any determination by the trial court that UroVenture's proposal does not require a CON necessarily impacts the SHP. SHCC serves in an advisory and consulting capacity to the State Board of Health regarding policies and regulations necessary for carrying out the SHP and the State Medical Facilities Plan. SHCC reviews and revises the SHP, reviews budgets of health systems agencies, conducts hearings on the SHP, and reviews applications for planning grants for health service development. § 22-4-8. Prime Medical reasons that SHCC was an indispensable party and it contends that the action should have been dismissed for the nonjoinder of SHCC. A party is an indispensable party pursuant to Rule 19(b), Ala. R. Civ. P., if: (1) he is a necessary party under the definition of Rule 19(a); (2) he cannot be made a party to the action; and (3) the trial court concludes that in equity and good conscience the action cannot proceed without the absent party.
Rule 19(a), Ala. R. Civ. P., defines a necessary party as one
"subject to jurisdiction of the court [who] shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."
We cannot agree that SHCC was a necessary party, as defined by Rule 19(a), to a complete adjudication of the issues between those already parties to this action, or that SHCC would be irreparably prejudiced by its absence in the action. SHPDA is the agency that promulgated the rule and is responsible for enforcing the challenged rule; therefore, it is the proper agency to be joined in the action that UroVenture filed pursuant to § 41-22-10.
Further, even if we presume that SHCC is a necessary party pursuant to Rule 19(a), Ala. R. Civ. P., our supreme court has held that nonparties who had actual notice of the litigation in process, and who could have elected to defend or oppose issues argued in the action, were not absent for purposes of Rule 19(b). See, e.g., Adams v. Boyles, 610 So.2d 1156 (Ala.1992)(court held that the remainderman to a parcel of property that was the subject of a boundary-line dispute was not an indispensable party because the evidence reflected that although he was not a formal party to the action, he had managed *1093 the litigation on behalf of his mother); Crum v. SouthTrust Bank of Alabama, N.A., 598 So.2d 867 (Ala.1992)(court held that the corporation was not an indispensable party to an action when the sole shareholder of the corporation was an active participant in the action); Long v. Vielle, 549 So.2d 968 (Ala.1989)(court held that a purchaser of a lot at a tax sale was not an indispensable party to an action for reformation of a deed when she had actual notice of the action as a result of her residence being located across the street from the parcel at issue, and she was present and testified at trial). In the present case, SHCC was aware of the present litigation in which SHPDA had been made a party, its interests were entirely aligned with those of SHPDA, and it could have chosen to intervene at any time. We conclude that the trial court did not err in denying Prime Medical and SHPDA's motion to dismiss the action for nonjoinder of SHCC.
We now address whether vendors of mobile lithotripsy equipment, like LithoMedTech and UroVenture, are subject to CON review. This is not the first time lithotripsy services have been before this court. However, the issue whether vendors of mobile lithotripsy equipment must seek CON review is an issue of first impression.
In University of Alabama Hospitals v. Alabama Renal Stone Institute, Inc., 518 So.2d 721 (Ala.Civ.App.1987), the University of Alabama Hospitals and Springhill Hospital appealed from the trial court's judgment, which held that SHPDA lacked the authority to grant a research exemption under federal regulations allowing the hospitals to have a lithotripsy machine for research purposes without first obtaining a CON. Alabama Renal intervened, seeking a declaration that the federal regulations were inconsistent with Alabama's CON laws. This court held that the hospitals were not required under § 22-21-260 et seq. to have a CON for equipment acquired solely for research.
In Springhill Hospitals, Inc. v. State Health Planning Agency, 549 So.2d 1348 (Ala.Civ.App.1989), Springhill Hospital contested SHPA's grant of a CON to Mobile Infirmary, which is located in the same county, to purchase a fixed-site lithotripter for gallstone elimination. At the time, Springhill Hospital had a CON to perform kidney-stone lithotripsy. The issue in that case was whether Springhill Hospital had standing to seek judicial review of SHPA's actions under the AAPA. We held that it was entitled to judicial review under the Act. This court did not address the merits of the CON to Mobile Infirmary.
In Alabama Renal Stone Institute, Inc. v. State Health Planning Agency, 594 So.2d 106 (Ala.Civ.App.1991), Baptist Hospital purchased a mobile lithotripsy machine from Medstone International to be used by it, DCH Hospital, and Huntsville Hospital for gallstone lithotripsy. We note that Medstone was not a party to the lawsuit. At the time, the mobile machine was experimental; it had not been approved by the Food and Drug Administration for gallstone treatment. SHPA granted a CON for use of the machine at the hospitals for the treatment of gallstones. After using the lithotripter for two months to eliminate gallstones, DCH Hospital petitioned SHPA to use the lithotripter to eliminate kidney stones. Alabama Renal and Springhill Hospital intervened, arguing that the hospitals were required to have a CON before the lithotripter could be used on kidney stones. SHPA refused to rule, citing insufficient information. The trial court held that using the machine for kidney lithotripsy was not a "new institutional health service." This court reversed, holding that using the machine to perform kidney lithotripsy was a procedure *1094 that had not been offered at the hospitals on a regular basis under § 22-21-263(a)(4).
In Alabama Renal Stone Institute, Inc. v. Statewide Health Coordinating Council, 628 So.2d 821 (Ala.Civ.App.1993), the issue was whether the SHCC had complied with the AAPA in adopting a rule regarding mobile renal (kidney stone) lithotripsy. In 1990, a urologist proposed a rule to revise the SHP to recognize the need for mobile lithotripters in certain designated areas of the state. Notice of the proposed rule was published in accordance with the AAPA. During the adoption process, the rule was revised as follows: that the number of urologists required at a particular site be designated; that no additional capital expenditures be made to acquire more lithotripters; that Birmingham and Mobile be excluded as mobile lithotripter sites because Alabama Renal and Springhill Hospital operated fixed-base sites in those areas; and that language be added to clarify the intent and meaning of the rule. 628 So.2d at 824. Alabama Renal and Springhill argued that the changes to the rule were substantial and that a new notice should be published. This court held that the original notice was sufficient despite the changes to the proposed rule.
In Alabama Renal Stone Institute, Inc. v. Trustees of Susie Parker Stringfellow Memorial Hospital, 680 So.2d 358 (Ala. Civ.App.1996), Susie Parker Stringfellow Memorial Hospital filed a CON application with SHPDA to become a designated site for mobile lithotripsy. SHPDA removed the application from the review cycle and Stringfellow petitioned for judicial review. The trial court entered an order returning the matter to SHPDA. However, the trial court failed to state its reasons for reversing SHPDA's decision. Pursuant to the AAPA, the trial court was required to set out the reasons for its decision. This court reversed the trial court's judgment for failing to comply with the statutory requirements.
In addressing the argument that CON review is not necessary for LithoMedTech and UroVenture, we note that § 22-21-261 states that the public policy sought to be served by the CON program is:
"[T]o assure that only those health care services and facilities found to be in the public interest shall be offered or developed in the state. It is the purpose of the Legislature in enacting this article to prevent the construction of unnecessary and inappropriate health care facilities through a system of mandatory reviews of new institutional health services, as the same are defined in this article."
(Emphasis added).
"Health services" are defined in § 22-21-260(8) as "clinically related (i.e., diagnostic, curative, or rehabilitative) services." Section 22-21-260(9) defines "Institutional Health Services" as "Health services provided in or through health care facilities or health maintenance organizations, including the entities through which such services are provided."
Section 22-21-263 provides that "new institutional health services" subject to CON review include: (1) the construction of a new health-care facility or health maintenance organization ("HMO"); (2) any capital expenditure by a health-care facility or HMO in excess of $1,500,000 for major medical equipment, in excess of $800,000 for new annual operating costs, or in excess of $3,200,000 for any other expenditure; (3) an increase in the bed capacity of a health-care facility or HMO; and (4) health services to be provided by a health-care facility or HMO and that were not provided by such facility or HMO in the past 12 months or that are exempted from the 12-month requirement because of *1095 the facility's classification as a "rural" hospital as defined by the United States Bureau of the Census/Office of Management and Budget.
The cardinal rule of statutory construction is to determine and give effect to the intent of the Legislature as manifested in the language of the statute. State v. Amerada Hess Corp., 788 So.2d 179 (Ala. Civ.App.2000), citing McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299 (Ala.1991).
"If possible, a court should gather the legislative intent from the language of the statute itself. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985). If the statute is ambiguous or uncertain, the court may consider conditions that might arise under the provisions of the statute and examine results that would flow from giving the language in question one particular meaning rather than another. Clark v. Houston County Comm'n, 507 So.2d 902, 903-04 (Ala. 1987). The legislative intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained by its passage. Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991)(citing Ex parte Holladay, 466 So.2d 956 (Ala.1985))."
Norfolk Southern Ry. v. Johnson, 740 So.2d 392, 396 (Ala.1999).
Section 22-21-263 defines "new institutional health services" in terms that contemplate either the provision of a new service or the acquisition of some physical facility or equipment that will enable a health-care facility or an HMO to provide a service. In other words, facilities or organizations that provide those health services are the focus of the certification requirements. Nothing in § 22-21-263 or any other provision of this article requires an entity that merely seeks to sell or lease equipment to a health-care facility (for that facility to then use in providing a service) to obtain a CON.
The definition of "institutional health service" in § 22-21-260(9) uses the clause "including the entities through which such services are offered." However, that clause refers to the "health-care facilities or Health Maintenance Organizations," which obviously are "entities." The term "health services" does not include "entities." Although the definition is unartfully written, what the Legislature was attempting to communicate was the idea that an "institutional health service" is a service provided in or through a health-care facility or an HMO, and that the health-care facility or HMO includes, for this purpose, those "entities" who contract with or are affiliated with the health-care facility or HMO to be the direct provider of the service to the patient. In other words, a health service will be considered as provided in or through a given health-care facility or an HMO (therefore potentially subjecting that health-care facility or HMO to the CON requirement) even if the direct deliverer of the services to the patient is a physician's professional corporation ("P.C."), if that P.C. is the "entity in or through which" the health-care facility provides a service to its patients. Because UroVenture and LithoMedTech are not providing a service, but only a piece of equipment, then they are not an "entity" referred to in the clause "including entities in or through which such services are provided."
We conclude that the health-care facilities and HMOs that provide health services must seek CON review in connection with providing such a service. The sellers or vendors of equipment that health-care facilities and HMOs use in order *1096 to provide such services need not obtain a CON.
The dissent's reliance on CON Rule 410-2-3-.07(5) and (6) in holding that mobile lithotripsy vendors are subject to CON review, is misplaced.
SHPDA and SHCC have the authority to promulgate rules and regulations for the purpose of establishing "review criteria and review procedures consistent with [§ 22-21-260 et seq.]." § 22-21-274. In 1990, SHCC adopted CON Rule 410-2-3-.07, which provides, in pertinent part:
"5. Each applicant for a Certificate of Need to provide a mobile lithotripter for use within the specified areas where there are not currently lithotripsy services provided by fixed-based units who demonstrates that the mobile lithotripsy unit meets with the necessary health standard and the costs of which are competitive may be granted by a Certificate of Need by SHPDA.
"6. Each applicant for a Certificate of Need to authorize the providing of lithotripsy by utilizing a mobile lithotripter must be a qualified site as defined herein and must demonstrate that patient charges and operational costs are competitive to current surgical and other methods and must provide data as requested by the SHPDA for planning and monitoring purposes."
Although SHPDA and SHCC have the authority to adopt rules consistent with § 22-21-260 et seq., they do not have the authority to require CON review for entities or matters that are not expressly subject to CON review under the law as set out by the Legislature. See Ex parte Crestwood Hosp. & Nursing Home, Inc., 670 So.2d 45 (Ala.1995)(SHPA rule providing that a fair hearing not be deemed a remedy that must be exhausted as a condition for judicial review contravened AAPA and, therefore, statute must prevail); Ex parte Jones Mfg. Co., 589 So.2d 208 (Ala.1991)(Department of Revenue administrative regulation had to be consistent with statutes under which its promulgation was authorized); Ex parte State Dep't of Human Res., 548 So.2d 176 (Ala.1988)(regulation adopted by Department of Human Resources impermissibly conflicted with judicial review procedures of AAPA).
AFFIRMED.
YATES, P.J., and PITTMAN and MURDOCK, JJ., concur.
CRAWLEY and THOMPSON, JJ., dissent.
THOMPSON, Judge, dissenting.
Appellate courts generally accord deference to a state agency's interpretation of its own regulations unless we determine that interpretation to be plainly erroneous. Roberts Health Care, Inc. v. State Health Planning & Dev. Agency, 698 So.2d 106, 109 (Ala.1997). This court has explained the rationale behind this presumption as follows:
"The special competence of the agency lends great weight to its decision, and that decision must be affirmed unless it is arbitrary and capricious or not made in compliance with applicable law. Neither this court nor the trial court may substitute its judgment for that of the administrative agency."
Alabama Renal Stone Inst. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993). Our supreme court has held:
"[A] long-standing interpretation given a statute or ordinance by officials charged with its administration is highly persuasive as to the intent of the legislative body when it enacted the statute or ordinance and, consequently, the meaning of the ordinance. This is especially *1097 so where the long-standing interpretation has controlled how the public has conducted its business."
City of Birmingham v. AmSouth Bank, N.A., 591 So.2d 473, 477 (Ala.1991).
A brief description of the medical procedures involved and the mobile equipment used to perform these procedures facilitates an understanding of the issues presented in this appeal. "Extracorporeal Lithotresis" also referred to as "lithotripsy" is a noninvasive surgical procedure for the treatment of kidney stones; it utilizes specialized equipment known as an "extracorporeal shockwave lithotripter," which literally uses shockwaves to disintegrate kidney stones. Rule 410-2-3-.07(1), a portion of the State Health Planning and Development Agency's rules governing the certificate-of-need program within the current State Health Plan ("SHP"). Rule 410-2-.07(2)(a)(5) of the SHP recognizes, using the "community need" requirement test, that the two approved fixed-based lithotripters currently located in Birmingham and in Mobile are capable of accommodating all of the estimated lithotripsy volume in Alabama.
As an exception to finding that the two existing "fixed based" lithotripters are sufficient to accommodate the estimated statewide lithotripsy volume and are also sufficient for other purposes such as accessibility and patient accommodations, the SHP authorizes mobile lithotripsy, pursuant to certain restrictions, in areas not having easy accessibility to the fixed units. The State Health Coordinating Council ("SHCC") first authorized mobile lithotripsy through the following amendments to Rule 410-2-3-.07, which became effective July 30, 1990:
"5. Each applicant for a Certificate of Need to provide a mobile lithotripter for use within the specified areas where there are not currently lithotripsy services provided by fixed-based units who demonstrates that the mobile lithotripsy unit meets with the necessary health standards and the costs of which are competitive may be granted a certificate of need by SHPDA.
"6. Each applicant for a Certificate of Need to authorize the providing of lithotripsy by utilizing a mobile lithotripter must be a qualified site as defined herein and must demonstrate that patient charges and operational costs are competitive to current surgical and other methods and must provide data as requested by the SHPDA for planning and monitoring purposes."
The clear language of the preceding rules demonstrates that since the time the SHP initially authorized the use of mobile lithotripsy equipment, both the site at which the service is to be performed and the vendor providing the mobile lithotripsy equipment have been required to apply for and obtain a CON before offering services to the public in order to assure cost competitiveness, quality control and to provide data for monitoring.
The requirement that a CON be obtained for both the site at which the service is to be performed and the mobile unit supplying the equipment is not a novel concept to the regulatory procedure of the Alabama SHP. The SHP also requires dual CON's for magnetic resonance imaging ("MRI") equipment, see Rule 410-2-3-.06(2)(c)5. and 6., and for mobile cardiac catheterization units, see Rule 410-2-3-.03(2)(b)2.
Additionally, I disagree with the trial court's finding that SHPDA lacked jurisdiction in this matter because the projected costs of the mobile units did not meet the statutory monetary thresholds of capital expenditures for CON review set forth in § 22-21-263(a)(2), Ala.Code 1975. Section 22-21-263, Ala.Code 1975, sets forth a *1098 number of mutually exclusive provisions under which new institutional health services will be considered to be subject to SHPDA review.
Section 22-21-263(a)(4) provides:
"Health services proposed to be offered in or through a health care facility or health maintenance organization, and which were not offered on a regular basis in or through such health care facility or health maintenance organization within the 12 month period prior to the time such services would be offered."
The term "institutional health services" is statutorily defined as "[h]ealth services provided in or through health care facilities or health maintenance organizations, including the entities in or through which such services are provided." § 22-21-260, Ala.Code 1975 (emphasis added). Incorporating by reference the statutory definition of "institutional health services" within the text of § 22-21-263(a)(4), Ala.Code 1975, it becomes clear that, even if the sites in question had been offering mobile lithotripsy in the past, the providing of that service through a new entity would constitute a new institutional health service which had not been offered in the previous 12 months, therefore subjecting the new health service to CON review. I conclude that the CON statutes promulgated by the SHPDA are designed to regulate institutional health services regardless of how or by whom they are provided.
Our review of this matter is limited to inquiring whether the SHPDA exceeded its statutory authority, whether its decision was supported by substantial evidence, and whether its action in granting the certificate of need was arbitrary and capricious. Sylacauga Health Care Ctr., Inc. v. Alabama State Health Planning Agency, 662 So.2d 265, 267 (Ala.Civ.App. 1994). From my review of the evidence, I conclude that SHPDA's findings were made in compliance with applicable law and were supported by substantial evidence. Therefore, I dissent.
CRAWLEY, J., concurs.
NOTES
[1] This case was originally assigned to one judge on the Court of Civil Appeals. It was reassigned to another judge on September 18, 2001.
[2] The five separate proposals were numerically designated as follows, and each proposal involves the indicated counties: Project No. AL-98029 (Lauderdale, Limestone, Madison, Jackson, and DeKalb); Project No. AL-98030 (Colbert, Franklin, Marion, Lawrence, Winston, Morgan, Cullman, Marshall, Etowah, and Cherokee); Project No. AL-99031 (Calhoun, Talladega, Cleburne, Clay, Randolph, Coosa, Tallapoosa, Chambers, Lee, Macon, Russell, Barbour, and Henry); Project No. AL-98032 (Montgomery, Bullock, Pike, Crenshaw, Covington, Coffee, Geneva, Dale, and Houston); and Project No. AL-98033 (Lamar, Pickens, Sumter, Hale, Perry, Monroe, Dallas, Elmore, Fayette, Tuscaloosa, Green, Bibb, Marengo, Wilcox, Autauga, and Lowndes).
[3] In 1994, Prime Medical acquired a CON from Baptist Medical Center-Montclair, a hospital in Birmingham. Prime Medical paid $300,000 for the hospital's mobile lithotripter machine. According to Prime Medical's vicechairman, Dr. Joseph Jenkins, it paid $5,900,000 to a corporation formed by 22 urologists for the right to provide mobile lithotripsy service to sites in Muscle Shoals, Anniston, Huntsville, Gadsden, Tuscaloosa, and Montgomery.
[4] Coastal Lithotripsy Partners provides mobile lithotripsy equipment and services on a scheduled rotating basis at two qualified sites in Dothan.
[5] In this appeal, Prime Medical did not show Tennessee Valley Lithotripsy as a name under which it was doing business.