The central issue in these appeals is whether vendors that provide mobile lithotripsy[1] equipment to hospitals are providing a "health service" requiring a "certificate of need" ("CON") under Ala. Code 1975, § 22-21-263(a)(4). The Court of Civil Appeals answered this question in the negative, holding that "the health-care facilities and HMOs [health maintenance organizations] that provide health services must seek CON review in connection with providing such a service[; however, the] sellers or vendors of equipment that health-care facilities and HMOs use in order to provide such services need not obtain a CON." PrimeLithotripter Operations, Inc. v. LithoMedTech of Alabama, LLC, [Ms. 2991270, December 28, 2001] 855 So.2d 1085, 1095 (Ala.Civ.App. 2001). We granted the petitions for writs of certiorari filed by the State Health Planning and Development Agency ("SHPDA") and by Prime Lithotripter Operations, Inc., d/b/a Tennessee Valley Lithotripsy and Alabama Lithotripsy Services, and its parent corporation, Prime Medical Services, Inc. (hereinafter collectively referred to as "Prime Medical"). We affirm the judgment of the Court of Civil Appeals.
For a detailed discussion of the facts and procedural posture of these cases, see Prime Lithotripter Operations, Inc., 855 So.2d at 1087. As an initial matter, we note that we agree with the Court of Civil Appeals that this case presents a matter of first impression. 855 So.2d at 1093.
Prime Medical and SHPDA contend that the sale or lease of mobile lithotripsy equipment is a "new institutional health service" under Ala. Code 1975, § 22-21-263(a)(4), and that vendors of the equipment would therefore need to acquire a CON. Section 22-21-263(a)(4) provides, in pertinent part:
 "(a) All new institutional health services which are subject to this article and which are proposed to be offered or developed within the state shall be subject to review under this article. No institutional health services which are subject to this article shall be permitted which are inconsistent with the State Health Plan. For the purposes of this article, new institutional health services shall include any of the following:
". . . .
 "(4) Health services proposed to be offered in or through a health care facility or health maintenance organization, and which were not offered on a regular basis in or through such health care facility or health maintenance organization within the 12 month period prior to the time such services would be offered. . . ."
(Emphasis added.)
The definition in 22-21-263(a)(4) of "new institutional health services" builds on the *Page 1101 
following definition of "institutional health services" provided in Ala. Code 1975, § 22-21-260(9): "health services provided in or through health care facilities or health maintenance organizations, including theentities in or through which such services are provided." (Emphasis added.) "Health services" are defined in Ala. Code 1975, § 22-21-260(8) as follows:
 "Clinically related (i.e., diagnostic, curative, or rehabilitative) services, including alcohol, drug abuse, and mental health services customarily furnished on either an in-patient or out-patient basis by health care facilities, but not including the lawful practice of any profession or vocation conducted independently of a health care facility and in accordance with applicable licensing laws of this state."
(Emphasis added.)
The Court of Civil Appeals reached its conclusion by interpreting that statutory language as follows:
 "Section 22-21-263 defines `new institutional health services' in terms that contemplate either the provision of a new service or the acquisition of some physical facility or equipment that will enable a health-care facility or an HMO to provide a service. In other words, facilities or organizations that provide those health services are the focus of the certification requirements. Nothing in § 22-21-263
or any other provision of this article requires an entity that merely seeks to sell or lease equipment to a health-care facility (for that facility to then use in providing a service) to obtain a CON.
 "The definition of `institutional health service' in § 22-21-260(9) uses the clause `including the entities through which such services are offered.' However, that clause refers to the `health-care facilities or Health Maintenance Organizations,' which obviously are `entities.' The term `health services' does not include `entities.' Although the definition is unartfully written, what the Legislature was attempting to communicate was the idea that an `institutional health service' is a service provided in or through a health-care facility or an HMO, and that the health-care facility or HMO includes, for this purpose, those `entities' who contract with or are affiliated with the health-care facility or HMO to be the direct provider of the service to the patient. In other words, a health service will be considered as provided in or through a given health-care facility or an HMO (therefore potentially subjecting that health-care facility or HMO to the CON requirement) even if the direct deliverer of the services to the patient is a physician's professional corporation (`P.C.'), if that P.C. is the `entity in or through which' the health-care facility provides a service to its patients. Because UroVenture and LithoMedTech are not providing a service, but only a piece of equipment, then they are not an `entity' referred to in the clause `including entities in or through which such services are provided.'
 "We conclude that the health-care facilities and HMOs that provide health services must seek CON review in connection with providing such a service. The sellers or vendors of equipment that health-care facilities and HMOs use in order to provide such services need not obtain a CON."
Prime Lithotripter Operations, Inc., 855 So.2d at 1095.
We find the Court of Civil Appeals' reasoning interpreting §22-21-263 to be sound. However, Prime Medical and SHPDA argue that the question of how to interpret the statutes at issue should be *Page 1102 
viewed with the presumption that SHPDA's interpretation is correct.
"`"`It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute.'"'" QCC, Inc. v. Hall,757 So.2d 1115, 1119 (Ala. 2000) (quoting NationsBank of North Carolina,N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256-57 (1995), quoting in turn other cases); see also Hulcher v. Taunton, 388 So.2d 1203,1206 (Ala. 1980) ("Interpretations of an act by the administrative agency charged with its enforcement, though not conclusive, are to be given great weight by the reviewing court.").
SHPDA, the agency charged with enforcing Alabama's CON laws, has interpreted the phrase "entities in or through which such services are provided" from § 22-21-260(9) to include "vendors of equipment which are providing services which are necessary to and a vital part of the provision of the health care service in question either to the health care facility, the health maintenance organization or the physicians who are directly providing the care to the patients." SHPDA's brief at 27. Prime Medical and SHPDA contend that this interpretation is "evidenced by the express terms of Ala. Admin. Code r. 410-1-4-.01(1)(d), which specifically includes `health services to be provided by vendors or lessors of equipment' in the definition of `new institutional health services' which are subject to review." Id. at 27-28. Prime Medical and SHPDA argue that because this interpretation is reasonable it is entitled to great deference, especially given the fact that SHPDA has applied this construction of the statutory language to require a CON for the purchase of mobile lithotripsy equipment for over 10 years.[2] See Farmer v.Hypo Holdings, Inc., 675 So.2d 387, 390 (Ala. 1996) ("We have previously stated that because the legislature is presumed to be aware of how an administrative agency has interpreted a statute, the subsequent reenactment of the statute without material change is an indication that the legislature approves the agency's interpretation."). We disagree.
The traditional deference given an administrative agency's interpretation of a statute appropriately exists (1) when the agency is actually charged with the enforcement of the statute and (2) when the interpretation does not exceed the agency's statutory authority (i.e., jurisdiction). See Ex parte Jones Mfg. Co., 589 So.2d 208, 210 (Ala. 1991) ("An administrative regulation must be consistent with the statutes under which its promulgation is authorized. . . . An administrative agency cannot usurp legislative powers or contravene a statute. . . . A regulation cannot subvert or enlarge upon statutory policy."). The latter condition follows from the *Page 1103 
understanding that administrative agencies are creatures of the Legislature, which serves as the source of their authority and sets their relevant boundaries. Because an administrative agency may not expand its own jurisdiction by its interpretation of a statute (or by any other means), courts deciding whether to give deference to an agency's interpretation of a statute must first determine whether the agency's interpretation is operative within the agency's particular sphere of statutory authority.
Here, the Court of Civil Appeals, in interpreting the relevant statutes, properly did not give deference to SHPDA's interpretation. SeePrime Lithotripter Operations, Inc., 855 So.2d at 1096. We agree with the Court of Civil Appeals' holding that, although § 22-21-263(a)(4) provides for CON review of certain "institutional health services," the sale or lease of mobile lithotripsy equipment does not constitute such a "service," but rather constitutes the mere providing of equipment forothers (who are subject to CON review) to provide the actual service. Therefore, because the sale or lease of mobile lithotripsy equipment falls outside the SHPDA's particular sphere of statutory authority, any SHPDA interpretation that would bring the acts of selling or leasing mobile lithotripsy equipment into that sphere is invalid and is not entitled to deference.[3]
Based on the above, we adopt the reasoning of the Court of Civil Appeals and affirm its judgment.
1011707 — AFFIRMED.
1011708 — AFFIRMED.
See, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., concurs in the result.
Lyons, J., recuses himself.
[1] Lithotripsy is a noninvasive surgical procedure that eliminates kidney stones by bombarding them with shock waves.
[2] Respondents LithoMedTech and UroVenture suggest that past CON review of mobile lithotripsy equipment was pursuant to Ala. Code 1975, § 22-21-263(a)(2), which includes in the definition of "new institutional health services" the following:
 "Any expenditure by or on behalf of a health care facility or health maintenance organization which . . . is a capital expenditure in excess of one million five hundred thousand dollars ($1,500,000) for major medical equipment except for magnetic resonance imaging equipment only, which shall be reviewable regardless of the expenditure. . . ."
LithoMedTech and UroVenture note that, in the past, the limit in the statute on a capital expenditure was $500,000, an amount far less than it is today, and that the cost of obtaining mobile lithotripsy equipment was far more than it is today. Thus, in the past, the statute was triggered, making the sale of mobile lithotripsy equipment that cost more than $500,000 subject to CON review.
[3] In its brief to this Court, Prime Medical also raises the issue whether the State Health Coordinating Council was a necessary party to its action under Ala. Code 1975, § 41-22-10. However, this argument was not listed as a grounds for certiorari review, and it is therefore beyond the scope of our review.